## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD DOMINGUEZ, ON BEHALF ) <br> OF HIMSELF AND ALL OTHERS ) <br> SIMILARLY SITUATED, ) <br>     2323 North Randolph Street ) <br>     Arlington, VA 22207 ) <br>     County: Arlington ) <br> ) <br>     Plaintiff, ) <br>         v. ) <br> ) <br> ) <br> UAL CORPORATION, ) <br>     1200 East Algonquin Road ) <br>     Elk Grove Township, Illinois 60007 ) <br>     County: Cook ) <br> ) <br> and ) <br> ) <br> UNITED AIRLINES, INC. ) <br>     1200 East Algonquin Road ) <br>     Elk Grove Township, Illinois 60007 ) <br>     County: Cook ) <br> ) <br>         Defendants. ) <br> ) | **Civil Action No.** _____ <br><br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1.     Plaintiff Richard Domiguez ("Plaintiff") brings this class action complaint

on behalf of himself and on behalf all other similarly situated passengers, who during the

Class Period set forth below purchased airline tickets from defendants United Airlines

and its parent UAL Corporation (collectively "defendants" or "United") on any of the

non-stop domestic air routes between the metropolitan Washington D.C. area served by

Washington's Dulles Airport ("IAD"), Washington National Airport ("DCA"), and

Baltimore-Washington International Airport ("BWI") and the San Francisco Bay Area served by San Francisco International Airport ("SFO"), Oakland International Airport ("OAK"), and San Jose International Airport ("SJC") (in either direction), to seek redress for defendants' violations of the federal antitrust laws and the common law of unjust enrichment. As detailed herein, United is a major domestic airline carrier, and possesses monopoly market power in the metropolitan Washington D.C.-San Francisco Bay Area nonstop travel route (i.e. the relevant market). United uses and has used its market power to impose an unlawful and anticompetitive contractual restriction on the airline tickets it sells on its monopoly route that forbids the consumer purchaser from ever reselling or transferring his or her ticket to a third party. By imposing this anticompetitive and unlawful contractual condition, United has been able to unlawfully restrain trade, thwart the emergence of a secondary marketplace for their airline tickets, and cement its monopoly market power in this air route.

2.     The details of United's unlawful conduct are more fully set forth below. The following narrative, however, provides a summarized example for illustrative purposes. Defendant United Airlines possesses monopoly market power in the market for nonstop air travel between the airports serving the metropolitan Washington D.C. aarea and the San Francisco Bay Area Airports. In fact, United operates 100 percent of such nonstop flights between IAD and SFO, and vice-versa. Even accounting for flights between other airports serving these metropolitan areas, like DCA, OAK, and SJC, United still possesses well in excess of 80 percent share of the relevant market. Defendant United uses its monopoly market power in this relevant market to impose a contractual condition, pursuant to which United bars all of its passenger customers on

2

these travel routes from ever reselling or transferring their airline tickets between the metropolitan Washington, D.C. area airports and the San Francisco Bay Area Airports. In the absence of United's unlawfully imposed restriction, if a passenger paid $ 400 for a ticket from IAD to SFO, and subsequently found that he was unable to use the ticket, he would have been able to attempt to resell that ticket to a third party to recoup part or all of his original purchase price. In this manner, competition would be present between United Airlines and the secondary marketplace comprised of such passengers seeking to resell their tickets, and the presence of such a secondary marketplace would serve as price-constraining competition on United's ticket prices along this nonstop route. After all, no rational consumer would pay United $ 400 for a ticket between IAD and SFO if the same consumer could purchase the same ticket for the same route and dates for a lower price on a secondary marketplace such as eBay or the like from a customer who was reselling a ticket that he originally purchased from United. United's unlawful contractual restriction barring all resales and transfers, however, prevents this competition from ever taking place.

3.     United's use of its monopoly market power in the market for nonstop air travel between the airports serving the metropolitan Washington. D.C. area and the San Francisco Bay Area Airports in order to impose this contractual bar on resale is an agreement in restraint of trade in violation of Section 1 of the Sherman Act. United's use of this contractual bar to cement its monopoly in this relevant market also amounts to unlawful monopolization in violation of Section 2 of the Sherman Act.

4.     No government regulation, statute, or rule requires the imposition of this contractual bar. Instead, it is a creation of United's own making, which has the

3

anticompetitive effects set forth herein. Indeed, other domestic and foreign carriers without United market power along these routes allow such transfer of tickets.

## JURISDICTION AND VENUE

5.   Count I of this complaint is brought to seek monetary and injunctive relief for United's violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. This Court, therefore, has subject-matter jurisdiction over this count pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

6.   Count II of this complaint is brought to seek monetary and injunctive relief for United's unlawful monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. This Court, therefore, has subject-matter jurisdiction over this count pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

7.   Count III of this complaint is brought to seek disgorgement, restitution, and/or any other redress deemed proper by the Court for United's violations of the common law of unjust enrichment. Because this claim arises from the same common nucleus of operative fact as counts I and II of this complaint, this Court has subject-matter jurisdiction over this count pursuant to 28 U.S.C. § 1367. Moreover, this Court also has jurisdiction over this claim under the Class Action Fairness Act.

8.   United transacts business within this judicial district. It markets and sells airlines tickets to District of Columbia residents for travel to and from the airports serving the metropolitan Washington, D.C. area. United also maintains a corporate office in the District of Columbia, located at 1025 Connecticut Avenue, NW Suite 1210 in Washington, D.C. 20036. This Court, therefore, has personal jurisdiction over each of

4

the defendants, and venue is proper in this district pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 22.

## PARTIES

9.    Plaintiff Richard Dominguez is a resident of Arlington, Virginia. During the Class Period, Plaintiff purchased a domestic airline ticket from defendant United Airlines to travel nonstop to and from IAD to SFO on United Airlines. Defendant United Airlines used its market power in the relevant market for nonstop air travel between the airports serving the metropolitan Washington, D.C. area and the San Francisco Bay Area Airports to impose a contractual restriction forbidding Plaintiff and similarly situated passengers from reselling or transferring their tickets.

10.    Defendant UAL Corporation is a corporation organized under the laws of the State of Delaware, and having its principal place of business at 1200 East Algonqin Road in Elk Grove Township, Illinois 60007. UAL Corporation is a holding company whose primary subsidiary is United Airlines, Inc. United Airlines, Inc. is also a corporation organized under the laws of the State of Delaware, and also having its principal place of business at 120 East Algonquin Road in Elk Grove Township, Illinois 60007. Unless otherwise specified, these two defendants are collectively referred to throughout this Complaint as either United or United Airlines. United is one of the country's largest domestic and international airline carriers, and on February 1, 2006 emerged from its Chapter 11 bankruptcy reorganization plan.

## RELEVANT MARKETS AND UNITED'S MARKET POWER THEREIN

11.    For purposes of this complaint and to the extent necessary, the relevant antitrust product market is the market for nonstop airline travel between the airports

serving the metropolitan Washington, D.C. area (i.e. IAD, DCA, and BWI) and the San Francisco Bay Area Airports (i.e. SFO, OAK, and SJC) in either direction.[1] The geographic relevant market is worldwide.

12. The foregoing relevant market is recognized as a discrete and separate markets for which there is discrete consumer demand. The distance between the San Francisco Bay Area and the metropolitan Washington, D.C. area is such that travel between these two localities and the cities served by the airports therein by means other than airline travel is not viewed as reasonably substitutable to airline travel in the eyes of consumers. This is so, in part, because the time required to travel between these two destinations by means other than airline travel (i.e. bus, car, rail, etc.) is so much greater than that required for airline travel that it does not afford a feasible alternative to airline travel between these two points. Whereas nonstop airline travel between these two airports requires approximately six hours of air travel, several days or more of travel would be required if the same trip were to be completed via other means, like ground or rail transport. Similarly, while it is conceivable to travel by air from one of these points and eventually end up at the other through interim connections in other cities, such means of airline travel does not serve as a reasonable substitute in the eyes of consumers for nonstop airline travel between the two airports. Nonstop service takes approximately six hours or less to complete and allows a customer to board a single plane once prior to arriving at his destination. By contrast, connecting service between the two cities

---

[1] Although DCA is an airport serving the metropolitan Washington, D.C. area, there are no nonstop flights between DCA and California offered by any carrier. DCA's presence in the relevant market definition, therefore, is not a factor but is included for the sake of completeness.

requires a passenger to expend significantly more time (sometime upwards of twice the nonstop travel time) in order to connect, disembark, and switch planes at the connecting cities. Connecting cities also make travelers subject to any delays or misconnections anywhere along the connecting city routes, thereby leaving their travel plans uncertain, particularly in the even of weather systems or other systemwide delays along the route of travel. For this and other reasons, consumers do not view connecting travel as reasonably substitutable with nonstop travel between these two destinations. Each means of airline travel (i.e. nonstop and connecting) has its own set of supply and demand curves, and its own price points. Consumers, the courts, and defendants also specifically recognize and have recognized that nonstop airline flights between two particular destinations as a proper means of defining a relevant market.

13.     Defendant United possesses monopoly market power in the foregoing relevant market, and as such has the power to raise prices and exclude competition within this relevant market. In fact, United operates 100 percent of the nonstop flights between IAD and SFO and vice-versa. Even accounting for nonstop travel involving the remaining airports serving the metropolitan Washington, D.C. area on the one hand and the San Francisco Bay area on the other, United's market share is well in excess of 80 percent.

14.     The foregoing relevant market is characterized by high barriers to entry. Not only is the investment required to compete in the market substantial, including millions of dollars in investment in airplanes, crews, ground staff, fuel, and other expenses, but would-be new entrants to this relevant market face logistical restraints that make such entry unlikely. Specifically, limitations on the number of gates, landing and

take-off slots, and other airport and airplane capacity controls serve to constrain new entrants.

## UNITED'S ANTICOMPETITIVE ACTS AND THEIR EFFECTS

15.     United has used its monopoly market power in the relevant market for nonstop airline travel between the airports serving the Washington, D.C. metropolitan area and the San Francisco Bay Area airports to impose an anticompetitive and unlawful contractual bar on the resale of United's airline tickets for travel between these two destinations.

16.     Specifically, United has used its monopoly market power in the market for nonstop airline travel betwen these two destinations (in either direction) in order to impose a contractual restriction in its airline ticket sales, pursuant to which a consumer passenger purchasing a United ticket for nonstop travel between these two destinations (in either direction) is forbidden from reselling or transferring his airline ticket to a third-party. If the passenger resells or transfers his ticket, defendant United dishonors the ticket, and does not allow the third-party purchaser to travel on the resold or transferred ticket.

17.     The effect of this contractual restriction is to insulate defendant United from competition from any secondary market sales of airline tickets for nonstop travel between these two destinations (i.e. to insulate it from any secondary market sales in the relevant market). Thus, consumers wishing to purchase domestic airline tickets for nonstop travel between the airports serving the metropolitan Washington, D.C. area and the San Francisco Bay area airports have no effective competitive choice but to purchase United tickets sold by United or its agents. The only other carriers offering nonstop

8

flights between these destinations are JetBlue (offering two daily nonstops in either direction betwen IAD and OAK) and Southwest (offering a two daily nonstops in either direction between BWI and SJC), but their available supply is so small compared to United's available seats in this market that they have no price-constraining effects on United's ability to exclude competition and raise prices in this relevant market. In the absence of United's unlawfully imposed contractual bar on the resale or transfer of tickets, consumers would be able to shop competitively for tickets for nonstop airline travel between these two destinations (in either direction) by comparing the price for the tickets offered for sale by United and its agents against the price being demanded for such tickets by secondary market sellers (i.e. passengers who were reselling their tickets). United's contractual bar, however, has prevented and destroyed this price-competition and has forced consumers of domestic airlines tickets for nonstop travel between airports serving the metropolitan Washington, D.C. area and the San Francisco Bay Area airports to pay supra-competitive prices for their airline tickets.

## ANTICOMPETITIVE EFFECTS ON CONSUMERS AND ANTITRUST INJURY

18.     As a direct, proximate and foreseeable result of the foregoing conduct, United has been able to thwart competition, restrain trade, and cement its monopoly in the relevant market alleged herein in which it has monopoly market power.

19.     In the absence of United's unlawful contractual prohibitions on ticket resales or transfers, consumers would be able to sell and purchase airline tickets for nonstop travel between these two destinations in an open secondary market at prices that would not be dictated or controlled by United. Thus, absent United's unlawful restrictions on resale or transfer of airline tickets, any willing seller would be able to sell

9

his or her airline ticket to any willing buyer in an open marketplace, on the price terms negotiated by the open marketplace. United would, therefore, face competition from such secondary marketplace sales for its nonstop tickets between the metropolitan Washington, D.C. area and the San Francisco Bay Area airports, and would have to compete against the pricing prevailing in this secondary marketplace.

20.     Thus, in the absence of United's unlawful contractual restrictions on resale or transfer of tickets, a consumer would not be limited to purchasing his airline tickets for nonstop travel between the airports serving the metropolitan Washington, D.C. area and the San Francisco Bay Area airports on only the price terms set by United. He would be able to comparison shop amongst all secondary sellers of such tickets for the best price, and United would also have to compete against such secondary sellers in making its own pricing decisions.

21.     As a further direct, proximate and foreseeable result of United's unlawful contractual bar on resale or transfer of airline tickets, United has managed to unlawfully maintain and cement its monopoly market power in the relevant markets alleged herein (i.e. nonstop airline travel between the metropolitan Washington, D.C. area airports and the San Francisco Bay Area airports). In the absence of this unlawful contractual bar on resale or transfer of tickets, consumers at large would no longer be effectively required to purchase their tickets between these two destinations only from defendant United or its agents. Instead, absent United's bar on resale of tickets, passengers could have purchased their nonstop tickets between these two destinations from any number of secondary marketplace resellers of such tickets. United's anticompetitive contractual bar on resale or transfer of tickets, however, has the effect of maintaining United's monopoly market

power in this relevant market, insulating United from competition from other sellers, and effectively forcing consumers to purchase their airline tickets in this relevant market only from United or United's agents.

22.     As a direct, proximate and foreseeable result of United's unlawful conduct, Plaintiff and all the members of the class he seeks to represent have been injured in their business and/or property. Each consumer-passenger of United in the relevant markets alleged herein has been forced to pay supra-competitive prices for his or her airline purchase from United. Absent United's anticompetitive conduct described herein, United would have faced competition for its ticket sales from the secondary marketplace, and would no longer be able to demand monopoly prices for the tickets it or its agents sell for travel within the relevant market alleged herein in which United is alleged to possess monopoly market power. Put simply, if a consumer were free to purchase his airline ticket not only from United or its agents, but also from any willing seller on such secondary marketplaces as eBay and the like, United's pricing power would be constrained and checked by such secondary marketplaces. By thwarting and destroying such secondary marketplaces for the relevant market alleged herein, United has been able to charge supra-competitive prices for its airline ticket sales within the relevant market, and has thereby caused Plaintiff and the class members to sustain antitrust injury.

23.     On its face, United's practice of contractually forbidding any resale or transfer of their airline tickets within the relevant market alleged herein has the obvious anticompetitive effect of precluding the ability of any willing seller who owns an airline ticket from selling that ticket to any willing buyer at any price negotiated between these two market actors. United's practices, instead, force consumers to purchase their airline

11

tickets at prices dictated only by United. To the extent that any procompetitive effects even exist for such conduct, an outright bar on all ticket resales or transfers is an overly broad and unnecessarily restrictive means of achieving any such procompetitive effects. To the extent any such procompetitive effects exist, they can be accomplished through less restrictive and less anticompetitive means than the outright bar on ticket resales or transfers of any kind.

## CLASS PERIOD

24. The Class Period for this action includes the period from February 2, 2006 to the present and going forward until such time as this action is adjudicated by trial, settlement or otherwise. Thus, the class includes all consumers who, at any time on or after February 2, 2006, purchased from United or United's agent a United Airlines ticket for nonstop travel on United Airlines originating at any of the airports serving the metropolitan Washington, D.C. area (i.e. IAD, DCA, or BWI) and terminating at any of the San Francisco Bay Area airports (i.e. SFO, OAK, or SJC), and/or vice-versa. The commencement of the Class Period, February 2, 2006, corresponds to the date that United re-emerged from its Chapter 11 bankruptcy proceedings, such that none of the claims arising within the Class Period are barred by the bankruptcy plan.

## CLASS ACTION ALLEGATIONS

25. Pursuant to Federal Rule of Civil Procedure 23(b)(3) and 23(b)(2), Plaintiff brings this action as a class action on behalf of himself and all similarly situated consumers who, during the Class Period, purchased airline tickets from United or United's agents for nonstop airline travel on United originating at any of the airports serving the metropolitan Washington, D.C. area (i.e. IAD, DCA, or BWI) and terminating

at any of the San Francisco Bay Area airports (i.e. SFO, OAK, or SJC), and/or vice-versa. Specifically and explicitly excluded from the class are defendants, their employees and relatives, affiliates and agents, as well as all judicial officers and governmental entities.

26.    The class is so numerous that joinder of all putative class members as parties would be impracticable. Although Plaintiff is not presently aware of the exact size of the class, it is reasonable to assume, based on the number of passengers transported by United to or from the airports at issue, that the number of class members is likely in the hundreds of thousands or in the millions.

27.    The claims of the named Plaintiff is typical of the claims of the absent class members. Specifically, during the Class Period, the named Plaintiff purchased a domestic airline ticket from United for nonstop airline travel on United between IAD and SFO and between SFO and IAD. United is alleged to have monopoly market power in this relevant market. Plaintiff, like the class members, was subject to a contractual bar imposed by United, pursuant to which the United forbade the named Plaintiff and the class members from reselling or transferring their airline tickets to a third party. The named Plaintiff, therefore, raises the same claims for redress under the Sherman Act and the common law, as is typical of the claims of the absent class members.

28.    There are common questions of law and fact that predominate over individual issues applicable to the individual Plaintiff and class members. Among these common questions of fact and law are the following:

• the definition of the relevant market(s);

• Defendants' market power within these relevant market(s);

13

- whether defendants imposed an unlawful contractual bar on the airline tickets they sold for travel within the relevant market(s) in which defendants' possess monopoly market power;

- whether defendants' practices amounted to an unlawful restraint of trade in violation of Section 1 of the Sherman Act;

- whether defendants' practices amounted to unlawful monopolization in violation of Section 2 of the Sherman Act;

- whether Plaintiff and the class members sustained injury to their business and/or property caused by reason of defendants' alleged violations;

- whether defendants have been unlawfully enriched at the expense of the class members;

- the proper measure of damages and any other remedy.

29. Plaintiff is an adequate representative of the interests of the class. Plaintiff is a member of the proposed class and has agreed to bring this action on behalf of the interests of the class. Plaintiff has also retained competent counsel, experienced in antitrust and class action litigation to zealously and diligently protect the interests of the class members.

30. United has acted or refused to act on grounds generally applicable to the class as a whole, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to the class as a whole. Specifically, in violation of the federal antitrust laws, United has imposed a contractual bar forbidding any member of the class from reselling or transferring his ticket, thereby thwarting competition and forcing class members to pay supra-competitive prices for their airline tickets. Plaintiff and the

14

class members are therefore entitled to declaratory and injunctive relief to enjoin United
from continuing to implement and enforce this contractual restriction, as it is continuing
to do.

31.     A class action is a superior and manageable means of adjudicating this
action over individual litigation by each class member, given that the amount at issue for
each individual class member is low relative to the cost of bringing suit, such that
classwide litigation provides the only realistic alternative for class members to seek
judicial redress.

## COUNT I

## (AGREEMENT IN RESTRAINT OF TRADE--VIOLATION OF 15 U.S.C. § 1)

32.     Plaintiff hereby incorporates by reference all of the allegations of this
complaint with the same force and effect as if they had been fully restated herein.

33.     United has monopoly market power in the relevant market alleged herein.

34.     United has used its market power in the relevant market to impose a
contractual prohibition on all tickets sold to class members for travel within that relevant
market, pursuant to which United forbids the consumer class member from ever reselling
or transferring their airline tickets to any third party.

35.     As a direct result of this practice, United has been able to: thwart
competition within the relevant market where it allegedly posses monopoly market
power; preclude the formation of a secondary marketplace for the resale or transfer of
airline tickets from any willing seller to any willing buyer at prices negotiated between

15

such actors; and, as a result, caused Plaintiff and the class members to pay supra-competitive prices for their airline ticket purchases within the foregoing relevant market.

36.     Plaintiff and the class members have been injured in their business and/or property as a direct, proximate, and foreseeable result of United's anticompetitive conduct in that they have been deprived a competitive choice of sellers of airline tickets within the relevant markets, and have been forced to pay supra-competitive prices for their airline ticket purchases.

37.     On its face, United's practice of contractually forbidding any resale or transfer of its airline tickets within the relevant market alleged herein has the obvious anticompetitive effect of precluding the ability of any willing seller who owns an airline ticket from selling that ticket to any willing buyer at any price negotiated between these two market actors. United's practices, instead, force consumers to purchase their airline tickets at prices dictated only by United. To the extent that any procompetitive effects even exist for such conduct, an outright bar on all ticket resales or transfers is an overly broad and unnecessarily restrictive means of achieving any such procompetitive effects. To the extent any such procompetitive effects exist, they can be accomplished through less restrictive and less anticompetitive means than the outright bar on ticket resales or transfers of any kind.

38.     United's contracts with Plaintiff and the class members, which include the contractual bar on resale or transfer of the tickets purchased by Plaintiff and the class members, amount to agreements in restraint of trade in violation of Section 1 of the Sherman Act.

16

39.     Plaintiff and the class members are entitled to monetary damages,

including trebling, as well as an award of their reasonable attorneys' fees and costs, as

redress for the injuries they sustained as a direct result of defendants' violations of

Section 1 of the Sherman Act.

40.     United continues to impose its contractual bar on the resale or transfer of

tickets sold by United or its agents to Plaintiff and the class members, and unless enjoined

will continue to do so, thereby continuing to injure Plaintiff and the class members, as

well as the traveling public.   Plaintiff is, therefore, entitled to declaratory and injunctive

relief to enjoin these continuing antitrust violations.

## COUNT II

### (UNLAWFUL MONOPOLIZATION—VIOLATION OF 15 U.S.C. § 2)

41.     Plaintiff hereby incorporates by reference all of the allegations of this

complaint with the same force and effect as if they had been fully restated herein.

42.     United has monopoly market power in the relevant market alleged herein.

43.     United unlawfully maintained its monopoly market power, not by superior

skill, acumen or business enterprise, but instead by imposing within the foregoing

relevant market in which it allegedly possesses monopoly market power a contractual bar

on resale or transfer of airline tickets sold by United or its agents.

44.     The contractual bar on resale or transfer of airline tickets ensures that for

the relevant market alleged herein within which United allegedly possesses monopoly

market power, consumers will have no effective competitive choice but to purchase their

airline tickets from United, the monopolist defendant or its agents, as consumers are

forbidden from purchasing their tickets from a secondary reseller of the tickets.

17

45.     As a direct, proximate, and foreseeable result of United's unlawful monopolization in violation of Section 2 of the Sherman Act, United has been able to and has charged Plaintiff and the class members monopoly supra-competitive prices for their airline purchases, thereby injuring Plaintiff and the class members in their business and/or property.

46.     Plaintiffs and the class members are entitled to monetary damages, including trebling, as well as an award of their reasonable attorneys' fees and costs, as redress for the injuries they sustained as a direct result of defendants' violations of Section 2 of the Sherman Act.

47.     United continues to impose its contractual bar on the resale or transfer of tickets sold by United or its agents to Plaintiff and the class members, and unless enjoined will continue to do so, thereby continuing to injure Plaintiff and the class members, as well as the traveling public.  Plaintiff is, therefore, entitled to declaratory and injunctive relief to enjoin these continuing antitrust violations.

## COUNT III

### (COMMON LAW UNJUST ENRICHMENT)

48.     Plaintiff hereby incorporates by reference all of the allegations of this complaint with the same force and effect as if they had been fully restated herein.

49.     By purchasing airline tickets from United or their agents, Plaintiff and the class members conveyed benefits, in the form of moneys paid, to United.

50.     United appreciated these benefits conveyed onto it by Plaintiff and the class members.

51.     Given defendants' conduct in imposing the anticompetitive and unlawful contractual prohibitions on the resale or transfer of airline tickets they sold to Plaintiff and the class members, it would be inequitable to allow defendants to continue to retain the benefits conveyed onto them by Plaintiff and the class members.

52.     Accordingly, Plaintiff and the class members are entitled to an award from this Court directing defendants to disgorge their ill-gotten gains so as to make restitution to Plaintiff and the class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the class pray for judgment from this Court against defendants, as follows:

That the Court determine that: this action may be maintained as a class action; Plaintiff and his counsel be designated as class representative and class counsel, respectively; and reasonable notice of this action be given to the members of the class;

That defendants be permanently enjoined from continuing in any manner the violations alleged in this complaint;

That damages be awarded according to proof, that Plaintiff and the class be awarded compensatory and treble damages as well as their reasonable attorneys' fees, costs of suit, and disbursements;

That defendants be ordered to disgorge all sums which they obtained by their wrongful acts;

That Plaintiff and the class be awarded pre- and post-judgment interest;

That Plaintiff and the class obtain such other and further injunctive and

declaratory relief as allowed under the Sherman and Clayton Acts or other statutes

applicable to this complaint; and,

That Plaintiff and the class obtain such other and further relief as the Court may

deem just and proper.

Plaintiff demands a trial by jury on all counts.


Dated: March 1, 2007


Roy A. Katriel, Esq. (D.C. Bar No. 460840)
THE KATRIEL LAW FIRM
1101 30th Street, NW  Suite 500
Washington, DC 20007
Telephone: (202) 625-4342
Facsimile:  (202) 330-5593

Counsel for Plaintiff


Additional Counsel for Plaintiffs
Gary B. Friedman, Esq. (*pro hac vice* application to be filed)
Tracey Kitzman, Esq.
Friedman Law Group, L.L.P..
270 Lafayette Street, 14th Floor
New York, NY 10012
Telephone: (212) 680-5150

07-418
A
RJL

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Richard Dominguez, On Behalf of Himself And All Others Similarly Situated | UAL Corporation and United Airlines, Inc. |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Arlington
(EXCEPT IN U.S. PLAINTIFF CASES)    88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Cook
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Roy A. Katriel (B.C. Bar No. 460840)
THE KATRIEL LAW FIRM
1101 30th Street, N.W.  Suite 500
Washington, DC 20007
Telephone: (202) 625-4342

CASE NUMBER   1:07CV00418

JUDGE: Richard J. Leon

DECK TYPE: Antitrust

DATE STAMP: 03/02/2007

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP...
FOR PLA...

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A.** *Antitrust*

[X] 410 Antitrust

**○ B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C.** *Administrative Agency Review*

☐ 151 Medicare Act

Social Security:
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E.** *General Civil (Other)*    **OR**    **○ F.** *Pro Se General Civil*

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General <br> ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment <br> (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act <br> ☐ 890 Other Statutory Actions <br> (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt. Reporting & Disclosure Act <br> ☐ 740 Labor Railway Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) <br> ☐ 443 Housing/Accommodations <br> ☐ 444 Welfare <br> ☐ 440 Other Civil Rights <br> ☐ 445 American w/Disabilities-Employment <br> ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholder's Suits <br> ☐ 190 Other Contracts <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

15 USC Sec. 1 et. seq.; Consumer antitrust class action challenging defendants' contractual restriction in its air ticket sales.

**VII. REQUESTED IN COMPLAINT**   ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** Unstated   Check YES only if demanded in complaint   **JURY DEMAND:** YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☐   If yes, please complete related case form.

DATE  March 1, 2007        SIGNATURE OF ATTORNEY OF RECORD

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.