# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD DOMINGUEZ, on behalf of himself and all others similarly situated,<br><br>                      Plaintiff,<br><br>v.<br><br>UAL CORPORATION<br>1200 East Algonquin Road<br>Elk Grove Township, Illinois  60007<br><br>and<br><br>UNITED AIR LINES, INC.<br>1200 East Algonquin Road<br>Elk Grove Township, Illinois  60007,<br><br>                      Defendants. | Civil Action No. 1:07CV00418 (RJL) |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM

<u>Of Counsel</u>:
Ricks Frazier
Richard Fiore
UAL CORPORATION
UNITED AIR LINES, INC.
77 West Wacker Drive
Chicago, IL  60601
(312) 997-8077

Richard J. Favretto (#156588)
John Roberti (#495718)
MAYER, BROWN, ROWE & MAW LLP
1909 K Street, NW
Washington, D.C. 20006
(202) 263-3000 (voice)
(202) 263-3300 (fax)

*Counsel for Defendants UAL Corporation and United Air Lines, Inc.*

Dated: May 24, 2007

# TABLE OF CONTENTS

                                                                                        **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I.      United's Decision to Be the Sole Distributor of Its Own Product Is Not Subject to Antitrust Challenge .................................................................................................... 2

          A.     United's Decision to Vertically Integrate Is Not Subject to Antitrust Challenge ......................................................................................................... 2

          B.     United Has No Obligation to Create Competition in the Distribution of Its Own Product ............................................................................................... 5

          C.     Dominguez's Claim that United Has Refused to Deal with Customers of its Competitors Is Specious ..................................................................... 6

II.     Dominguez Has Failed to Allege a Conscious Commitment to an Unlawful Scheme Within the Meaning of Section 1. ................................................................. 8

III.    Dominguez's Claim for Unjust Enrichment Fails as a Matter of Law ........................... 11

CONCLUSION ....................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Adams v. Pan American World Airways, Inc.*, 828 F.2d 24 (D.C. Cir. 1987) ..................4

*Albert H. Cayne Equipment Corp. v. Union Asbestos & Rubber Co.*, 220 F. Supp. 784 (S.D.N.Y. 1963) ..................8

*Albrecht v. Committee on Employee Benefits of the Federal Reserve Employee Benefits System*, 357 F.3d 62 (D.C. Cir. 2004) ..................11

*American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356 (N.D. Ga. 2006) ..................12

*American Airlines v. Christensen*, 967 F.2d 410 (10th Cir. 1992) ..................10, 11

*Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519 (1983) ..................4

*Belfiore v. New York Times Co.*, 826 F.2d 177 (2d Cir. 1987) ..................3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. --, 2007 WL 1461066 (May 21, 2007) ..................10, 11, 12

*Bitterman v. Louisville & Nashville Railroad Co.*, 207 U.S. 205 (1907) ..................4, 5

*Brunson Communications, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550 (E.D. Pa. 2002) ..................10

*Canadian Pacific Railway Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2003 WL 1907943 (N.D. Ill. Apr. 17, 2003) ..................12

*Cancall PCS, LLC v. Omnipoint Corp.*, No. 99 Civ 3395, 2000 WL 272309 (S.D.N.Y. Mar. 10, 2000) ..................10

*Covad Communications Co. v. Bell Atlantic Corp.*, 398 F.3d 666 (D.C. Cir. 2005) ..................1, 6, 7, 8

*Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802 (6th Cir. 1988) ..................4

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) ..................11

*Federal Trade Commission v. Beech-Nut Packing Co.*, 257 U.S. 441 (1922) ..................8

*Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838 (N.D. Cal. 2004) ..................12

*Horrell v. SBC Communications Inc.*, No. 5:05CV88, 2006 U.S. Dist. LEXIS 15659 (E.D. Tex. Feb. 16, 2006) ..................8

*Lorain Journal Co. v. United States*, 342 U.S. 143 (1951) ..................7, 8

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S.752 (1984) ..................................................9

*Newberry v. Washington Post Co.*, 438 F. Supp. 470 (D.D.C. 1977) ....................................3, 4, 9

*Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 797 F.2d 370 (7th Cir. 1986) ..................................................................................................................................5

*Schor v. Abbott Laboratories*, 457 F.3d 608 (7th Cir. 2006), *cert. denied*, 127 S. Ct. 1257 (2007)..............................................................................................................................4

*Service Employees International Union Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068 (D.C. Cir. 2001) ..........................................................................................5

*SMC Corp. v. PeopleSoft USA, Inc.*, No. 1:00-CV-01095-LJM-VS, 2004 WL 2538641 (S.D. Ind. Oct. 12, 2004)..................................................................................................12

*Smilecare Dental Group v. Delta Dental of California, Inc.*, 88 F.3d 780 (9th Cir. 1996).............5

*Theatre Party Associates, Inc. v. Shubert Organization, Inc.*, 695 F. Supp. 150 (S.D.N.Y. 1988) ..................................................................................................................................3

*Thorogood v. Sears, Roebuck & Co.*, No 06 C 1999, 2006 WL 3302640 (N.D. Ill. Nov. 9, 2006)..................................................................................................12

*Toscano v. Professional Golfers' Association*, 258 F.3d 978 (9th Cir. 2001)...............................10

*United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707 (1944)...............................................8

*United States v. Colgate & Co.*, 250 U.S. 300 (1919) ................................................................1, 2

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko*, 540 U.S. 398 (2004)..........................................................................................................4, 6, 7

*Wabash Railroad Co. v. Davidson*, 168 F.2d 300 (6th Cir. 1948)..................................................7

*Winter Hill Frozen Foods & Services, Inc. v. Haagen-Dazs Co.*, 691 F. Supp. 539 (D. Mass. 1988).................................................................................................................8, 9

*Wolf v. Trans World Airlines, Inc.*, 544 F.2d 134 (3d Cir. 1976) ...................................................9

*Yentsch v. Texaco, Inc.*, 630 F.2d 46 (2d Cir.1980).......................................................................8

**Statutes and Regulations:**

14 C.F.R. §§ 253.2-253.6....................................................................................................................9

49 U.S.C. § 41707..............................................................................................................................9

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Miscellaneous:**

2 Phillip E. Areeda, Roger Blair & Herbert Hovenkamp, *Antitrust Law* ¶ 339b
   (2d ed. 2000) ..............................................................................................................4

3A Phillip E. Areeda, Roger Blair & Herbert Hovenkamp, *Antitrust Law* ¶ 756b
   (2d ed. 2002) ..............................................................................................................4

3A Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 759e6 (2d ed. 2002) .......................3

3A Phillip E. Areeda, Roger Blair, Herbert Hovenkamp, *Antitrust Law* ¶ 766
   (2d ed. 2002) ..............................................................................................................3

**INTRODUCTION**

In his Complaint and again in his Opposition to United's Motion to Dismiss,[1] Plaintiff Richard Dominguez launches a frontal assault on a bedrock principle: antitrust law does not require a firm to create competition for itself in the distribution of its own product.

Dominguez's Complaint alleges that United has violated the antitrust laws because consumers may purchase United's tickets only from "United or its agents." No case or commentator ever has suggested that such a theory is viable, and indeed, Dominguez cites to none. In fact, all authority is to the contrary.

It is an antitrust truth that a firm (even a monopolist) is privileged to choose how its product is distributed. This principle of freedom to distribute is the heart of the venerable *Colgate* doctrine, the continued viability of which Dominguez does not dispute. This principle also is the foundation for the authority that states that it is per se lawful for a monopolist to be the sole distributor of its own products. And this principle is in the bones of the authority that holds that a monopolist is not required to take steps to help its rivals compete.

Accordingly, to save his antitrust claims, Dominguez has tried to re-characterize his claims as something other than what he has alleged. He now creates a fiction that United is refusing to deal with the "customers of its competitors," when all that he has pled is United's mere refusal to honor invalid tickets. But even if Dominguez's characterization were accurate, his claims collapse under the weight of authority that Dominguez fails to distinguish, including this Circuit's recent decision in *Covad Communications Co. v. Bell Atlantic Corp.*, 398 F. 3d 666 (D.C. Cir. 2005).

---

[1] Defendants United Air Lines, Inc. and UAL Corporation will be referred to collectively as "United." United's Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the Complaint will be referred to as "Mem." Dominguez's Opposition to Defendants' Motion to Dismiss the Complaint will be referred to as "Opp."

Dominguez also argues that contrary to the Complaint, which clearly and repeatedly alleges that United has "impose[d]" its no-resale policy (Compl. ¶¶ 1, 2, 3, 9, 15-17, 34, 40, 43, 47), he is basing his claims not on a unilateral act, but on a purported conspiracy between himself and United.  This attempted recharacterization also fails, because the "conspiracy" he alleges is nothing more than his acceptance of United's unilateral terms of sale.  Case law, unrebutted by Dominguez, says that such an agreement is insufficient to state a claim for a conspiracy within the meaning of Section 1.

Dominguez's Complaint should be dismissed in its entirety, with prejudice.

## ARGUMENT

**I.    United's Decision to Be the Sole Distributor of Its Own Product Is Not Subject to Antitrust Challenge.**

At its heart, Dominguez's Complaint pleads nothing more than United's exercise of its independent discretion as to the method by which it distributes its product.  Dominguez cites no case, and United remains aware of none, that holds that a firm, even a monopolist, must create competition in the distribution of its own products.  Vertical integration into distribution is not subject to antitrust challenge.  This well-established rule of law is fatal to Dominguez's Complaint.

**A.    United's Decision to Vertically Integrate Is Not Subject to Antitrust Challenge.**

As explained in its opening brief, United enjoys "the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *United States v. Colgate & Co.,* 250 U.S. 300, 307 (1919).  Dominguez concedes – as he must – that *Colgate* remains good law.  Opp. at 9-10.

The centerpiece of Dominguez's Complaint is that United "effectively requir[es]" passengers to purchase their United tickets from "United or its agents." Compl. ¶ 21.

2

Dominguez therefore alleges that it is a violation of antitrust law for a monopolist, such as United is purported to be, to choose to be the sole distributor of its products.

As United explained in its opening brief (Mem. at 7-8), this simply is not a cognizable claim under the antitrust laws. It is well established that a decision by a monopolist to be vertically integrated in distribution is per se lawful. 3A Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶¶ 759e6, 766 (2d ed. 2002); *accord Belfiore v. N.Y. Times Co.*, 826 F.2d 177, 181 (2d Cir. 1987) ("vertical integration even by a monopolist publisher does not without more offend Section 2") (internal quotation marks omitted); *Theatre Party Assocs., Inc. v. Shubert Org., Inc.*, 695 F. Supp. 150, 155 (S.D.N.Y. 1988) ("Because a manufacturer or seller is free to control the distribution of its own product, it can unilaterally terminate or replace independent distributors and vertically integrate without violating the antitrust laws. Vertical integration without more, even by a monopolist, does not offend Section 2.").

In his Opposition, Dominguez fails to dispute this point, and actually provides additional authority supporting United's position. For example, in *Newberry v. Washington Post Co.*, 438 F. Supp. 470 (D.D.C. 1977), cited by Dominguez on page 9 of his Opposition, this Court held that a monopolist lawfully may select its preferred method of distribution, even if its preference is to sell its product through its own employees and agents rather than to third parties for resale. Indeed, the *Newberry* court held that the *Washington Post*'s decision to terminate all its independent dealers and replace them with sales agents was perfectly lawful, even for a monopolist:

> In placing the agency system into effect the Post was *merely creating a more integrated system of distribution for its own product, as is the right of any seller*. . . . . A dealer system imposed by this Court would amount to undue interference with *the seller's right to fashion the manner in which he chooses to sell his own product*. It is suggested that the Post has monopoly power and therefore has lost this right. But while the Post undoubtedly has power over price, this is a power

3

> gained by success, not predatory measures, and it remains free to choose between selling by employee, agent, or dealer since the choice has not been shown to constitute that 'willful maintenance' of monopoly power condemned in *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71, 16 L. Ed. 2d 778, 86 S. Ct. 1698 (1966).

*Newberry,* 345 F. Supp at 485 (emphasis added).

At least part of the reason for this rule is that when a monopolist distributes its products by itself, even if some market participants may experience injury in fact,[2] there is little if any risk that there will be injury to competition.  3A Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 756b, at 11 (2d ed. 2002) (when a monopolist vertically integrates, "competitive injury is the exception rather than the rule.").[3]

A corollary to the principle that United may choose to be the sole seller of its own tickets is that United may inform its customers that tickets are not transferable.  This is why, as United explained in its opening brief, courts have held for 100 years that a common carrier may adopt rules prohibiting ticket resale.[4]  Mem. at 10-12 (citing *Bitterman*, 207 U.S. at 221).  This policy

---

[2] Dominguez, of course, has not adequately alleged injury in fact and therefore lacks standing. Mem. at 20-24. Dominguez's response – that this is a "throw-away argument," and that his bare allegation of having purchased a ticket from United is enough (Opp. at 30-33) – fails to address the issue United raised in its opening brief: his claim is highly speculative, and depends on the occurrence of numerous hypothetical intervening events. To have standing, a would-be plaintiff must plead injury with "a sufficiently direct causal relationship to the alleged wrongdoing." *Serv. Employees Int'l Union Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068, 1072 (D.C. Cir. 2001); *see also Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 542-43 (1983); *Adams v. Pan Am. World Airways, Inc.*, 828 F.2d 24, 30 (D.C. Cir. 1987); 2 Phillip E. Areeda, Roger Blair & Herbert Hovenkamp, *Antitrust Law* ¶ 339b, at 326 (2d ed. 2000) ("If what makes causation doubtful is the number or improbability of steps in the chain from alleged violation to injury, then dismissal for remoteness is in order.").

[3] This principle applies here because Dominguez has failed to allege *any* injury to competition among airlines, which are the only competitors in the relevant market as he has defined it. This omission is fatal to his antitrust claims. Mem. at 18-21. Dominguez now asserts that he need allege only that (1) United has restricted competition in the "secondary market" for resale of United tickets, and (2) United's no-resale policy raises the price of United tickets. Opp. at 18-20. But these are not negative consequences to competition *in the relevant market alleged in the Complaint*, which is what is required. *See Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802 (6th Cir. 1988) (to state a Section 1 claim, a plaintiff must allege injury to interbrand – not intrabrand – competition); *Verizon Commc'ns Inc. v. Law Offices of Curtis v. Trinko,* 540 U.S. 398, 407 (2004) (the charging of a monopoly price by a lawful monopolist is not illegal).

[4] Dominguez attempts to distinguish *Bitterman v. Louisville & Nashville Railroad Company,* 207 U.S. 205 (1907), by asserting that United's purported market share is larger than the defendant's was in that case. But

has substantial procompetitive effects, because it enables United to offer discounted restricted tickets.[5]

### B. United Has No Obligation to Create Competition in the Distribution of Its Own Product.

It is another antitrust axiom that a firm (even a monopolist) has no duty to help its competitors. United therefore has no duty to aid ticket brokers or others who might wish to resell United's tickets in competition with United. Mem. at 8-10; *Schor v. Abbott Labs.*, 457 F.3d 608, 610 (7th Cir. 2006) ("antitrust law does not require monopolists to cooperate with rivals by selling them products that would help the rivals compete") *cert. denied*, 127 S. Ct. 1257 (2007); *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 375-376 (7th Cir. 1986) (a firm with lawful monopoly power has "no general duty to help its competitors . . . [and] no duty to extend a helping hand to new entrants").

The gravamen of Dominguez's Complaint is that by refusing to allow resale of its tickets, United has "thwart[ed] the emergence of a secondary market for" travel on United's planes. Compl. ¶ 1. Thus, Dominguez alleges that (1) would-be resellers seek to compete against United in the sale of United tickets, and (2) antitrust law requires United to supply these resellers with tickets to be resold in competition with United. Opp. at 22-23. This is fundamentally a claim that antitrust law requires a monopolist to supply goods or services to its competitors. It

---

market share was irrelevant in *Bitterman*, and it is irrelevant here. Where conduct is established as lawful and justified by prior controlling authority, the business justification for that conduct must be accepted as a matter of law. *See Smilecare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 786 (9th Cir. 1996) (where the validity of the business reasons for a given policy has been established by operation of prior case law, the policy will be deemed to be "supported as a matter of law by a legitimate business justification"). In *Smilecare*, it made no difference that the defendant was alleged to be a monopolist.

[5] Dominguez now claims that enjoining United's rule against ticket resale would not "prevent United from imposing any restrictions of its choosing on customers wishing to obtain restricted or discounted pricing." Opp. at 29 n.6. Of course it would: United would have no way of knowing whether passengers complied with the restrictions on the ticket (such as advance purchase or a Saturday stayover). Ticket arbitrage would thus undermine United's ability to charge full fare to customers who do not agree to the restrictions, which makes the discounts possible.

5

therefore is governed by the Supreme Court's decision in *Trinko*, and the D.C. Circuit's decision in *Covad*, both of which require Dominguez to plead either that United previously dealt with these rivals, or that a refusal to deal is against United's economic interests. *Trinko*, 540 U.S. at 409; *Covad*, 398 F.3d at 673. As United explained in its opening brief, Dominguez has not – and cannot – meet this standard. Mem. at 8-15.

Significantly, Dominguez does not even cite – much less attempt to distinguish – the D.C. Circuit's controlling 2005 *Covad* decision. And his efforts to distinguish the Supreme Court's holdings in *Trinko* are unavailing. First, Dominguez is simply wrong when he argues that this Court is precluded from considering whether United's no-resale policy is in its interest because that issue is "factual." Opp. at 29-30. Dominguez indisputably has failed to make the allegations required by *Trinko* and *Covad* to prevent dismissal of his Complaint.[6] Second, Dominguez's argument that dicta in *Trinko* suggest that a refusal to deal with competitors at full retail price may trigger antitrust scrutiny (*id.* at 27-28) fails for the simple reason that he has not alleged that United ever refused to sell tickets to anyone at retail prices.[7]

### C. Dominguez's Claim that United Has Refused to Deal with Customers of its Competitors Is Specious.

Dominguez attempts to avoid *Trinko* and *Covad* by claiming that United has not refused to deal with its *competitors*, but instead has refused to deal with its *competitors' customers*.

---

[6] United also has shown that the business justification for United's policy is established by facts and regulatory requirements of which this Court can and should take judicial notice. Dominguez has no serious response to this argument. For example, Dominguez has no answer to the argument that JetBlue (clearly a non-monopolist) has exactly the same no-resale policy, and concedes that at least some Southwest tickets are non-transferable. Opp. at 29. Similarly, Dominguez has no answer to the argument that United has the same no-resale policy everywhere it flies. His only answer to the indisputable fact that his proposed relief would impair United's security procedures is that all buyers of tickets on the secondary market should go through significantly more extensive pre-boarding screening. *Id.* at 29 n.5. This demonstrates the impracticality of Dominguez's position, and shows why Dominguez has failed to allege that United's no-resale policy is not in its interest.

[7] In addition, this dictum relies on the inference (adopted by this Circuit in *Covad*) that refusal to deal with a competitor at retail would not make economic sense but for an anticompetitive purpose. That argument is inapplicable here, because Dominguez fails to allege that United's no-resale rule makes no economic sense.

6

Opp. at 22-23.  This, however, is not what he alleged.  The Complaint does not plead that United refuses to deal with passengers who also patronize its real competitors in the air transportation market defined in the complaint (*i.e.,* JetBlue and Southwest).  It alleges only that United refuses to honor tickets that have been resold in violation of United's ticketing rules.  Those tickets are invalid under United's rules, and United lawfully may refuse to allow a passenger to board a plane on an invalid ticket.[8]

But even if one strained to read the Complaint as alleging a refusal to deal with competitors' customers, it still would not meet the pleading standards of this Circuit.  The D.C. Circuit squarely confronted this issue in *Covad*, and held that under *Trinko*, a suit challenging a monopolist's refusal to deal with its competitor's customers *must* be dismissed *unless* the plaintiff alleges that the refusal to deal "caused [the defendant] short-term economic loss" and reflected an intent to "driv[e] [plaintiff] out of the market and recover[] monopoly profits in the long-run."  *Covad*, 398 F.3d at 675-676.  Dominguez, of course, alleges neither that it was in United's short-term economic interest to sell transferable tickets, nor that United hoped to recoup the losses it incurred by refusing to sell such tickets by charging monopoly prices later.  Absent such allegations, *Covad* compels dismissal of Dominguez's Section 2 claim.

The only authority cited by Dominguez in support of his Section 2 claim, *Lorain Journal Co. v. United States*, 342 U.S. 143, 149 (1951), confirms that *Trinko* and *Covad* govern this case. In *Lorain Journal*, the newspaper publisher defendant refused to sell advertising to customers who advertised on its only competitor, radio station WEOL.  If the defendant caught one of its customers advertising on WEOL, it would terminate that customer's advertising contract and

---

[8] As a general rule, a carrier-passenger relationship cannot be formed without the carrier's consent.  "A person cannot force his way upon a train against the will of the carrier and thereby become a passenger. The acceptance of the carrier is needed." *Wabash R.R. Co. v. Davidson*, 168 F.2d 300, 303 (6th Cir. 1948).  United's decision not to honor a transferred ticket is merely a means of enforcing its recognized right to choose with whom it does business.

7

would not renew it until the customer ceased advertising on WEOL.  In other words, the defendant terminated contracts with existing customers – presumably profitable contracts – in order to secure a monopoly and gain the ability to charge a monopoly price.  These are *precisely* the sort of facts that *Covad* requires to save a Section 2 complaint from dismissal, and that Dominguez does not and cannot allege.  *See Horrell v. SBC Commc'ns Inc.*, No. 5:05CV88, 2006 U.S. Dist. LEXIS 15659 at *39-41 (E.D. Tex. Feb. 16, 2006) (distinguishing *Lorain Journal*, and rejecting a Section 2 claim based on a monopolist's refusal to deal with its competitor's customers, where plaintiff could not allege either that defendant had previously done so or that it profitably could do so).

For these reasons, the controlling precedent of the Supreme Court and of this Circuit requires that Dominguez's Section 2 claims be dismissed.

## II.  Dominguez Has Failed to Allege a Conscious Commitment to an Unlawful Scheme Within the Meaning of Section 1.

Dominguez also seeks to circumvent established antitrust authority that United may choose to be the sole distributor of its own products by arguing that the existence of a Contract of Carriage between United and its passengers somehow changes the rules.  This argument must fail.  Dominguez does not explain why a practice that is recognized as per se lawful for a monopolist suddenly transmogrifies into an antitrust violation merely because United unilaterally imposes certain ticketing rules and includes those rules in a Contract of Carriage.[9]

---

[9] The cases Dominguez cites in support of this proposition are either inapposite or distinctly unhelpful to his arguments.  Three of his cases – *FTC v. Beech-Nut Packing Co.*, 257 U.S. 441 (1922), *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707 (1944), and *Yentsch v. Texaco, Inc.*, 630 F.2d 46 (2d Cir.1980) – involved vertical price-fixing, which clearly requires a "conscious commitment" by both parties to the "unlawful scheme."  Another, *Albert H. Cayne Equipment Corp. v. Union Asbestos & Rubber Co.*, 220 F. Supp. 784 (S.D.N.Y. 1963), is cited for the proposition that "refusals to continue to deal unless the buyer join with the seller in a contract violative of the antitrust laws are clearly illegal" (Opp. at 11 (emphasis omitted)), but Dominguez's Complaint nowhere alleges any such refusal to deal.  And in *Winter Hill Frozen Foods & Services, Inc. v. Haagen-Dazs Co.*, 691 F. Supp. 539 (D. Mass. 1988), the court actually granted summary judgment to the defendant, finding that plaintiff – an ousted unauthorized distributor of the defendant's products

As a matter of law, the Contract of Carriage[10] is not an actionable conspiracy within the meaning of Section 1 of the Sherman Act. The Contract of Carriage merely notifies passengers of the terms on which United will do business[11] – which, as Dominguez acknowledges in his Complaint, are not subject to negotiation. *See supra* at 2; *see also* Compl. ¶ 4 (describing the no-resale rule as "a creation of United's own making"). These terms are binding on all passengers as a matter of law. *See Wolf v. Trans World Airlines, Inc.*, 544 F.2d 134, 137 (3d Cir. 1976).

Dominguez's allegation of the existence of a Contract of Carriage therefore does not plead the "conscious commitment to a common scheme designed to achieve an unlawful objective" necessary to state a Section 1 claim. *See Monsanto Co. v. Spray-Rite Serv. Corp.,* 465 U.S. 752, 764 (1984).[12] In its opening brief, United cited three cases holding that a contract is not a Section 1 conspiracy where one party "merely agreed to purchase products or provide a

---

– had failed to allege that the defendant's refusal to deal constituted an unreasonable restraint of trade. *Id.* at 545. ("[T]he central issue in this case is whether a manufacturer's termination of an unauthorized distributor constitutes an unreasonable restraint of trade. The Court rules that it does not."). *See also id.* at 543 ("a mere unilateral refusal to deal, without more, is not cognizable under Section 1 of the Sherman Act").

[10] It is not clear why Dominguez spends several pages strenuously arguing that there is a contract between United and Dominguez (*see* Opp. at 12-14), because United clearly concedes, for purposes of this motion, the existence of a Contract of Carriage. *See, e.g.*, Mem. at 17. Indeed, United attached its publicly-available Contract of Carriage to its opening brief.

[11] Department of Transportation regulations require airlines to provide passengers with notice of the terms governing their tickets, *see* 14 C.F.R. §§ 253.2-253.6, and by statute, United is authorized to do so by including those terms in a Contract of Carriage incorporated by reference in every ticket. *See* 49 U.S.C. § 41707.

It eludes logic to suggest − as plaintiff apparently does − that mere compliance with federal regulatory standards requiring notice of airline ticket terms may be deemed a contract in restraint of trade.

[12] Dominguez cites *Newberry* for the proposition that "the Sherman Act does not differentiate between contracts enforced by coercion and those maintained by agreement." Opp. at 9. This quotation is both incomplete and out-of-context. The full sentence from which Dominguez's snippet is excerpted reads: "Contrary to the defendant's assertion, *evidence of coercion is not required for a finding of illegality*; the Sherman Act does not differentiate between contracts enforced by coercion and those maintained by agreement." *Newberry*, 438 F. Supp. at 475 n.6. (emphasis added). As is evident from the complete quotation, the point is that an agreement may be inferred from a course of dealing *without* evidence of coercion, not (as plaintiff misleadingly suggests) that an agreement may be inferred *from* evidence of coercion. *Newberry* thus does not address the relevant Section 1 question, which is whether, as required by *Monsanto*, 465 U.S. at 764, Dominguez's Complaint sufficiently alleges that United and its passengers share "a conscious commitment to a common scheme designed to achieve an unlawful objective."

9

service under conditions set by the other party," but had "no role in the creation or enforcement of those rules," and did not agree "to use those rules to restrain trade."  Mem. at 16-17; *see also Toscano v. Prof'l Golfers' Ass'n*, 258 F.3d 978, 984-986 (9th Cir. 2001).  This is precisely what United's Contract of Carriage is, and under these circumstances, the imposition of the allegedly anticompetitive contract is treated as a unilateral act which may be judged only under Section 2.  Mem. at 16-17; *see also Am. Airlines v. Christensen*, 967 F.2d 410, 413-414 (10th Cir. 1992) (defendant "independently set the terms under which it would offer its travel awards, and the mere fact that its members accepted those terms does not generate the kind of concerted action needed to violate Section 1").

The only argument that Dominguez offers in response is that *Christensen* and *Toscano* were decided on summary judgment, not on motions to dismiss.  This is a distinction without a difference.  The Supreme Court held this week that the standards of plausibility applied at the summary judgment and directed verdict phases apply equally at the motion to dismiss phase.  *Bell Atl. Corp. v. Twombly*, 550 U.S. --, 2007 WL 1461066 at *8 (May 21, 2007) (the "plausibility" requirement of the antitrust summary judgment standard applies equally to motions to dismiss).[13]

Dominguez's theory apparently is that he (and each of United's customers) conspired with United to achieve the "unlawful objective" of maintaining United's purported monopoly.  It is not plausible that customers would join in such a conspiracy.  That allegation therefore fails

---

[13] *See also Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 563-564 (E.D. Pa. 2002) ("Though *Matsushita* was decided in the context of a motion for summary judgment, its reasoning, nevertheless, has been used to decide motions to dismiss and suggests that Plaintiff's Section One claim should be dismissed.  The sparse facts set forth in the Amended Complaint are not sufficient to support an inference that defendants acted conspiratorially.") (internal footnote omitted); *Cancall PCS, LLC v. Omnipoint Corp.*, No. 99 Civ. 3395, 2000 WL 272309, at *7 n.4 (S.D.N.Y. Mar. 10, 2000) ("Although *Matsushita* involved a motion for summary judgment, not a motion to dismiss, here, the plaintiffs have pled facts which, even if true and viewed in the light most favorable to plaintiffs, cannot support a claim for predatory pricing, and the Court will therefore dismiss any such claim at this stage.").

the *Twombly* test. *Christensen* is indistinguishable, and both *Christensen* and *Twombly* compel dismissal of Dominguez's Section 1 claim.

### III. Dominguez's Claim for Unjust Enrichment Fails as a Matter of Law.

Dominguez's response in defense of his unjust enrichment claim boils down to two points: (1) his claim arises under *federal* common law, and therefore escapes the well-established preemptive reach of the Airline Deregulation Act; and (2) it is of no moment that he seeks to assert a quasi-contractual claim while at the same time strenuously pleading the existence of a contract, because he is pleading in the alternative. Opp. at 33-35. Neither of these arguments has merit.

First, in general, "[t]here is no federal . . . common law." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The only cases Dominguez cites in support of his purported federal common-law claim are ERISA cases; he cites no authority permitting an airline passenger to bring a federal common law claim for unjust enrichment against an airline, and he offers no reason why this Court should create such an unprecedented cause of action.

Second, Dominguez's claim fails because his complaint repeatedly alleges the existence of a contract governing his relationship with United. *See, e.g.*, Compl. ¶¶ 1, 3, 15–17, 19–21, 23, 27, 30, 34, 37, 40, 44, 47. Courts have recognized, and Dominguez does not dispute, that "there can be no claim for unjust enrichment when an express contract exists between the parties." *Albrecht v. Comm. on Employee Benefits of Fed. Reserve Employee Benefits Sys.*, 357 F.3d 62, 69 (D.C. Cir. 2004) (internal quotation marks omitted). And because Dominguez's unjust enrichment claim expressly incorporates by reference "all of the allegations of [the] complaint with the same force and effect as if they had been fully restated herein" (Compl. ¶ 48), his "alternative pleading" argument is not available. "Where unjust enrichment claims incorporate by reference allegations of the existence of a contract between the parties, courts will dismiss the

11

unjust enrichment claim." *Thorogood v. Sears, Roebuck & Co.*, No. 06 C 1999, 2006 WL 3302640, at *5 (N.D. Ill. Nov. 9, 2006); *accord Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1372 (N.D. Ga. 2006); *SMC Corp. v. PeopleSoft USA, Inc.*, No. 1:00-CV-01095-LJM-VS, 2004 WL 2538641, at *3 (S.D. Ind. Oct. 12, 2004) (same); *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (same); *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2003 WL 1907943, at *4-*5 (N.D. Ill. Apr. 17, 2003) (same).

For these reasons – and because the Complaint entirely fails to allege any wrongful conduct – Dominguez's unjust enrichment claim should be dismissed.

## CONCLUSION

The Supreme Court recently held that because "proceeding to antitrust discovery can be expensive," courts should take care to "avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence." *Twombly,* 2007 WL 1461066 at *9 (internal quotation marks and citations omitted). Dominguez's novel and unprecedented claims are at odds with bedrock antitrust principles, and that makes this case a particularly appropriate one for disposition as a matter of law, without subjecting United to the burdens of antitrust discovery.

Dominguez has failed to state a claim upon which relief may be granted and his complaint should be dismissed. In light of the numerous independent grounds warranting dismissal, United respectfully requests that the Court dismiss this case with prejudice.

Dated: May 24, 2007                     Respectfully submitted,

                                        UAL CORPORATION and
                                        UNITED AIR LINES, INC.


                                        By:  /s/ Richard J. Favretto

                                        Richard J. Favretto (156588)
                                        John Roberti (495718)
                                        MAYER, BROWN, ROWE & MAW LLP
                                        1909 K Street, NW
                                        Washington, D.C. 20006
                                        (202) 263-3000

                                        Counsel for Defendants UAL Corporation and
                                        United Air Lines, Inc.

Of Counsel:
Ricks Frazier
Richard Fiore
UAL CORPORATION
UNITED AIR LINES, INC.
77 West Wacker Drive
Chicago, IL  60601
(312) 997-8077

13

## **CERTIFICATE OF SERVICE**

I, John Roberti, an attorney, certify that on May 24, 2007, I caused true and correct copies of the foregoing REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM to be filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel who has registered for receipt of documents filed in this manner:

> Roy A. Katriel
> THE KATRIEL LAW FIRM
> 1101 30th Street NW
> Suite 500
> Washington, DC  20007
> (202) 625-4342

In addition, on this same date, I caused the above-mentioned memorandum to be served upon the following counsel of record via e-mail:

> Gary B. Friedman
> Tracey Kitzman
> FRIEDMAN LAW GROUP, LLP
> 270 Lafayette Street, 14th Floor
> New York, NY  10012
> (212) 680-5150

/s/ John Roberti
John Roberti