# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICHARD DOMINGUEZ, ON BEHALF )
OF HIMSELF AND ALL OTHERS )
SIMILARLY SITUATED, )
          )  **Civil Action 1: 07CV00418 (RJL)**
      Plaintiff, )
   v.      )
           )
UAL CORPORATION,   )
           )
and          )
           )
UNITED AIR LINES, INC.,   )
           )
      Defendants. )
_____)

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND TO STAY DISCOVERY

Defendants UAL Corporation and United Air Lines, Inc. (collectively, "United"), respectfully move this Court pursuant to Federal Rule of Civil Procedure 26(c) for a protective order and to stay discovery. The specific grounds for this Motion are set forth in the Defendants' Memorandum in Support of this Motion For a Protective Order and To Stay Discovery, which is incorporated by reference herein. A proposed order is attached hereto.

Dated:  November 8, 2007

Respectfully submitted,

UAL CORPORATION and
UNITED AIR LINES, INC.


By: /s/_____

Richard J. Favretto (#156588)
John Roberti (#76397)
MAYER, BROWN, ROWE & MAW, LLP
1909 K Street, NW
Washington, DC  20006
T:  (202) 263-3000
F:  (202) 263-3300


*Attorneys for Defendants UAL Corporation
and United Air Lines, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RICHARD DOMINGUEZ, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | ) ) ) | |
| | ) | **Civil Action 1: 07CV00418 (RJL)** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| UAL CORPORATION, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED AIR LINES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE
ORDER AND TO STAY DISCOVERY**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Defendants UAL

Corporation and United Air Lines, Inc. (collectively, "United"), by and through undersigned

counsel, submit this memorandum of law in support of their motion for protective order and to

stay discovery until the Court resolves United's pending motion to dismiss.

## INTRODUCTION

In an important antitrust case decided last Term, the Supreme Court stressed that, because

"proceeding to antitrust discovery can be expensive," courts must carefully scrutinize antitrust

claims at the pleading stage. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007). The

opinion in *Twombly* reinforces a common-sense rule that has long been recognized by lower

courts: Before a complex antitrust case proceeds to discovery, the court should decide whether

or not the complaint sufficiently alleges any cognizable claim.

This case demonstrates the wisdom of that rule. The plaintiff here, who seeks to represent a huge class of United passengers, has filed a complaint making the counter-intuitive claim that a longstanding custom and practice of the airline industry—the prohibition on resale of issued tickets—violates the antitrust laws. United's motion to dismiss the complaint for failure to state a claim has been fully briefed and is ripe for decision by this Court. Although United's arguments for dismissal plainly are substantial, plaintiff now has propounded sweeping and intrusive document requests (attached hereto as Exhibit A), asking for a huge volume of sensitive information from United. The effort to respond to these broad requests would impose heavy expenses on United; supervising the production of United's sensitive business information would likewise burden the Court.

In order to avoid the waste of both United's and the Court's resources, United respectfully asks this Court to issue a protective order deferring plaintiff's discovery requests until United's motion to dismiss is resolved. If the Court grants the motion and dismisses plaintiff's complaint, then the parties and this Court will have avoided a great deal of unnecessary expense. If the Court denies the motion, then discovery may commence thereafter, with plaintiff having suffered no prejudice from the modest delay.

## BACKGROUND

The complaint alleges that United's policy restricting the resale of issued tickets on routes between metropolitan San Francisco and metropolitan Washington, D.C. is illegal under the Sherman Act. This unilateral practice is identical to that employed by virtually every major air carrier, and is applied by United and other airlines on a system-wide basis. Nevertheless, plaintiff alleges that the practice is unlawful and that he and several hundred thousand other class members can claim injury as result.

United has moved to dismiss, arguing that, as a matter of law:  (1) United cannot be liable under the antitrust laws for merely establishing the terms upon which it distributes its own product; (2) United has no duty to create additional distributors of its passenger tickets; and (3) United's unilateral ticket distribution policy is not transformed into an unlawful restraint of trade simply because the plaintiff has purchased a ticket subject to the carrier's established terms.  If the Court accepts United's arguments, the complaint will be dismissed in its entirety.

Rather than waiting to find out whether his case can go forward, however, plaintiff has served a series of onerous document requests upon United.  Plaintiff's expansive document requests seek vast amounts of information from United for a multi-year period, including:

- All documents in United's possession relating to pricing, competition, and sales regarding flights to and from more than half a dozen airports across the country. (*See* Ex. A, Document Requests 2, 4, 7, 16).

- All documents regarding the effect of entry by Southwest Airlines and JetBlue on United's pricing for air travel tickets in *any* air travel route. (*See* Ex. A, Document Requests 5 and 6).

- All documents relating to, pertaining to, and/or referencing competitors and/or competition in the nonstop air travel routes between the Washington metropolitan airports and the San Francisco Bay area airports. (*See* Ex. A, Document Request 7).

Such requests clearly are burdensome in scope.  Beyond that, the requests seek the most sensitive and strategic documents about how United competes with rival airlines.  Discovery would entail the inherent risk that, despite the parties' best intentions and efforts, that information will be utilized in a manner that would harm United's business.  Protective orders

are no guarantee against such risk.[1]  Providing such proprietary and confidential information

should not be required without the clearest demonstration of relevance and necessity.  At a

minimum, discovery of such a nature should await an initial determination of the complaint's

legal sufficiency.

It is worth noting, moreover, that the burdens of discovery in this case will fall almost

entirely on United.  Plaintiff can be expected to have virtually no documents and little

discoverable information about the practices he challenges in his complaint.  Once discovery

commences, however, plaintiff will be able to use the discovery process to fish through the files

of United and numerous other carriers in an effort to support his dubious claims.  Use of the

discovery process in such a one-sided fashion to impose disproportionate burdens on a defendant

and non-parties surely should not proceed until the Court has decided that the complaint's

allegations state a legally cognizable claim.

## ARGUMENT

Rule 26(c) of the Federal Rules of Civil Procedure expressly empowers courts to "make

any order which justice requires to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense . . . ."  The Supreme Court has explicitly urged judges

"to exercise appropriate control over the discovery process."  *Herbert v. Lando*, 441 U.S. 153,

177 (1979).

---

[1]      For example, in a recent case involving Whole Foods Markets, Inc., the Federal Trade
Commission inadvertently disclosed proprietary information when it electronically filed
documents that contained confidential information detailing how Whole Foods Market, Inc.
competes with its acquisition target, Wild Oats Markets, Inc.  The Associated Press immediately
seized upon the information and published Whole Foods' plans to close several Wild Oats stores
upon completion of the acquisition and Whole Foods' attempts to keep organic suppliers from
also supplying local Wal-Marts. Christopher Rugaber, *Error by FTC Reveals Whole Foods'
Trade Secrets*, Wash. Post,  Aug. 15, 2007, at D03.

It is already well established that a stay of discovery is appropriate where the case may be subject to dismissal as a matter of law.  *See, e.g.*, *United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1382 (D.C. Cir. 1984); *Brennan v. Local Union No. 639*, 494 F.2d 1092, 1100 (D.C. Cir. 1974) (stay of discovery pending summary judgment motion).  Postponing discovery pending resolution of a dispositive motion "is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Chavous v. D.C. Responsibility & Mgmt. Assistance Auth.*,  201 F.R.D. 1, 2 (D.D.C. 2001) (citation omitted).  Indeed, this Court has deemed it to be "well settled that discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending."  *Anderson v. United States Attorneys Office*, Civ. A. No. 91-2262, 1992 WL 159186, at *1 (D.D.C. June 19, 1992); *see also Capital Eng'g & Mfg. Co. v. Weinberger*, Civ. A. No. 87-1623, 1988 WL 13272, at *1 (D.D.C. Feb. 5, 1988) (recognizing that "courts have not hesitated to stay discovery as to the merits of an action pending initial consideration of preliminary, and potentially dispositive, motions").

This policy that discovery shall be stayed pending the resolution of a motion to dismiss is particularly important in antitrust cases, where discovery is often quite burdensome.  The Supreme Court's recent decision in *Twombly* forcefully confirms the desirability of this approach.  In *Twombly,* the plaintiffs brought an action on behalf of a putative class numbering in the millions, alleging unlawful collusion among local telephone companies.  The complaint alleged collusive parallel conduct among the telephone companies in not competing with one another outside of their traditional territories, and resisting rival entry into those areas.  The Supreme Court held that mere allegations of parallel conduct, accompanied by conclusory assertions of conspiracy, are insufficient to defeat a motion to dismiss.

In stressing the importance of disposing of deficient claims at the pleading stage, the Court noted that antitrust discovery can be extremely burdensome.  The discovery sought by plaintiffs in *Twombly*, the Court observed, would be "a sprawling, costly, and a hugely time-consuming undertaking" that is "not easily susceptible" to effective case management.  *Twombly*, 127 S. Ct. at 1967 n.6.  Noting that even the "threat of discovery expense will push cost-conscious defendants to settle even anemic cases," the Court endorsed pleading standards designed "to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope that the [discovery] process will reveal relevant evidence.'"  *Id.*  at  1967 (citation omitted).

Other courts have been quick to reinforce *Twombly*'s emphasis of the importance of examining a complaint's legitimacy before discovery moves forward in antitrust cases.  In *In re Graphics Processing Units Antitrust Litigation,* No. C 06-07417, 2007 WL 2127577 (N.D. Cal. July 24, 2007), the court heeded the Supreme Court's warning of proceeding with discovery before adjudication of the merits of the complaint in an antitrust case.  "[T]o allow antitrust discovery prior to sustaining a complaint would defeat one of the rationales of *Twombly*, at least when the discovery would be burdensome."  *Id*. at *4.  Noting that "adjudicating the motions to dismiss will shed light on the best course for discovery," the court stayed discovery until after the pending motion to dismiss was resolved.  *Id*. at *5; *see also In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308 at 321 (N.D. Cal. 2007) (stating that staying discovery may be particularly appropriate in antitrust cases, where discovery tends to be broad, time-consuming, and expensive).

Similarly, the Second Circuit has underscored the wisdom of closely examining complaints before proceeding with full-blown discovery on the merits in an antitrust action.  *In*

*re Elevator Antitrust Litig.*, No. 06-3128-c, 2007 WL 2471805 (2d Cir. Sept. 4, 2007).

Affirming dismissal of the complaint at issue because it did not "contain 'enough factual matter

(taken as true) to suggest that an agreement [to engage in anticompetitive conduct] was made'"

(*id.* at *2 (citing *Twombly*, 127 S. Ct. at 1965)), that court noted that the discovery costs entailed

in antitrust litigation particularly heightened the importance of examining the merits of

complaints before permitting discovery.  *Id.* at *2, n.4.

       Allowing Dominguez to embark on discovery here would flout the recent directive from

the Supreme Court.  Plaintiff would impose the "potentially enormous expense of discovery"

upon United, despite the fact that his claim is legally meritless.  The prospect of this result

should be avoided.

       Nothing about this case counsels a different approach.  This Court has held that when

plaintiffs have neither suggested that they need discovery in order to oppose a pending motion to

dismiss nor demonstrated that they would be prejudiced by a stay of discovery, staying discovery

until resolution of the motion to dismiss is the proper course.  *Chavous*,  201 F.R.D. at 3, 4.  *See*

*also Maljack Prod., Inc. v. Motion Picture Ass'n of Am.*, Civ. A. No. 90-1121,1990 WL 157900,

at *1 (D.D.C. Oct. 3, 1990) ("avoidance of potentially unnecessary discovery is warranted"

where a motion to dismiss is pending and plaintiff would not be prejudiced by a stay of

discovery pending determination of the motion to dismiss);  *Moldea v. N.Y. Times Co*., 137

F.R.D. 1 (D.D.C. 1990) (granting stay of discovery when no further discovery is necessary to

sustain opposition to summary judgment motion, and noting that any stay would be brief).  Such

is the case here.  None of the discovery requests propounded by plaintiff relate to the controlling

questions presented by United's motion to dismiss, nor is any discovery necessary to resolve the

purely legal issues raised in that motion.  Plaintiff does not allege that he or the class is suffering irreparable harm such that any delay would be prejudicial.

Indeed, any contrary assertion would be disingenuous.  This is especially clear because, in a prior class action complaint filed in this district against three other major airline carriers, a comparable putative class represented by plaintiff's current counsel alleged that Northwest Airlines, Delta Airlines, and Continental Airlines had engaged in the same unlawful conduct as that alleged in this action.  (Attached hereto as Exhibit B).  However, that class action complaint was voluntarily dismissed on October 14, 2005 and has not been reinstated.  (Order attached hereto as Exhibit C).  It now appears that it is United's turn to suffer the costs and burdens of such meritless litigation.  At a minimum, no further costly proceedings should occur here prior to a ruling on United's pending motion to dismiss.

Finally, any discovery stay would be brief.  Once the Court has ruled on the pending motion to dismiss, plaintiff can renew his discovery requests in the context of any limitations suggested by the Court's decision.  At that time, the parties will be able to proceed with discovery informed by the Court's determination of what issues, if any, remain for disposition in light of surviving claims.  This would also serve the efficient conduct of any further proceedings.

Accordingly, the Court should enter a protective order, staying discovery in this case until United's dispositive motion is resolved.

**CONCLUSION**

For the foregoing reasons, defendants' Motion for a Protective Order and to Stay

Discovery should be granted.

Dated: November 8, 2007                    Respectfully submitted,


                                           UAL CORPORATION and
                                           UNITED AIR LINES, INC.


                              By:    /s/
                                   _____

                                   Richard J. Favretto (156588)
                                   John Roberti (76397)
                                   MAYER BROWN LLP
                                   1909 K Street, NW
                                   Washington, D.C. 20006
                                   (202) 263-3000

                                   Counsel for Defendants UAL Corporation and
                                   United Air Lines, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that, on this __th day of November, 2007, I caused a true and correct

copy of the foregoing **DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND TO**

**STAY DISCOVERY** to be served upon the following counsel of record via first-class mail,

postage prepaid:

Roy A. Katriel
THE KATRIEL LAW FIRM
1101 30th Street, NW
Suite 500
Washington, D.C. 20007
(202) 625-4342

Gary B. Friedman
Tracey Kitzman
FRIEDMAN LAW GROUP, LLP
270 Lafayette Street, 14th Floor
New York, NY 10012
(212) 680-5150


_____
John Roberti

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICHARD DOMINGUEZ, on behalf of
himself and all others similarly situated,

                                    Plaintiff,

v.

UAL CORPORATION

and

UNITED AIR LINES, INC.

                                    Defendants.

Civil Action No. 1:07CV00418 (RLJ)

**PLAINTIFF'S FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS AND
THINGS PROPOUNDED ON
DEFENDANTS UAL CORPORATION
AND UNITED AIR LINES, INC.**

Pursuant to Federal Rule of Civil Procedure 34 and this Court's Scheduling Order,
Plaintiff Richard Dominguez, by and through his undersigned counsel, hereby requests
that YOU provide for inspection the following DOCUMENTS.

### DEFINITIONS AND INSTRUCTIONS

1.      "YOU," "YOUR," or "YOURSELF" means defendants UAL Corporation
and United Air Lines, Inc., all persons acting or purporting to act on any of their behalf,
as well as any and all of their agents, employees, principals, subsidiaries, parents,
successors, and predecessors in interest

2.      "UNITED" means United Air Lines, the commercial air carrier and
defendant in this action, as well as all persons acting or purporting to act on its behalf, as
well as any and all of its agents, employees, principals, subsidiaries, parents, successors,
and predecessors in interest

1

3.    "WASHINGTON METROPOLITAN AIRPORTS" means the following airports: Washington's Ronald Reagan National Airport ("DCA") (formerly known as Washington's National Airport); Washington's Dulles International Airport; and, Thurgood Marshall Baltimore-Washington International Airport ("BWI") (formerly known as the Baltimore-Washington International Airport).

4.    "SAN FRANCISCO BAY AREA AIRPORTS" means the following airports: San Francisco International Airport ("SFO"); Oakland's International Airport ("OAK"); and, San Jose International Airport ("SJC").

5.    "CLASS PERIOD" means, for purposes of these document requests, the time period between February 2, 2006 and the present, inclusive.

6.    The term "DOCUMENT" shall be defined in the broadest possible meaning under the Federal Rules of Civil Procedure including, but not limited to, any writing, drawing, film, videotape, chart, photograph, mechanical or electronic sound recording or transcript thereof, notices, memoranda, diaries, minutes, records, correspondence, books, journals, ledgers, financial statements, work papers, reports, press releases, brochures, invoices, bills, vouchers, worksheets, jottings, notes, post-it notes or flags, letters, abstracts, slides, transparencies, spreadsheets, calendars, e-mail, charts, checks or drafts, diagrams, graphs, telephone bills, telephone logs, resumes, summaries, computations or other data compilations from which tangible or intangible information can be obtained. All non-identical copies, versions, revisions, or drafts of any document shall be considered separate documents.

7.    The terms "AND" and "OR" and "AND/OR" shall be construed broadly and expansively as "and/or," and shall not be construed to limit the documents or information sought in any manner.

8.    The term "RELATING" means, without limitation, constituting, mentioning, referring to, describing, summarizing, evidencing, listing, relevant to, demonstrating, tending to prove or disprove, or explaining.

9.    The term "PERTAINING" means, without limitation, concerning, belonging, relating to, respecting, touching upon, or having to do with.

10.    The term "REFERENCING" means, without limitation, mentioning, accrediting, attributing, linking, designating, ascribing, associating, or connecting.

11.    The term "ALL" shall be defined in the broadest possible meaning under the Federal Rules of Civil Procedure including, but not limited to, each and every, any, a complete set of, the entire universe of, and every single.

12.    YOU are required to produce all DOCUMENTS in your possession, custody and/or control.  If YOU withhold production of any DOCUMENT on the basis that the DOCUMENT is protected from dissemination on the basis of any privilege or any other applicable law, you are required to specify the privilege or law relied upon and include the date, title, description, and subject-matter of the DOCUMENT, and the names of the author, addressees, and other recipients.

13.    If YOU withhold and/or object to the production of any DOCUMENT on the basis that the DOCUMENT has already been produced, YOU are required to identify the Bates-stamp designation and date of production of the DOCUMENT.

14.    Copies of all electronic-mail, computer tape, disks (hard or floppy), cards,

3

files, CD-ROMs, or other storage media containing information or data responsive to the requests herein must be made available and, if necessary, translated by the respondent into reasonably usable form and produced.

15.    If any part of a DOCUMENT is responsive to any request, the whole DOCUMENT is to be produced.

16.    Any alteration of a responsive DOCUMENT, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications and other versions of a final DOCUMENT is a separate and distinct DOCUMENT, and it must be produced.

17.    If YOU are unable to produce a DOCUMENT in response to any request, so state, and indicate whether the DOCUMENT ever existed, or whether the DOCUMENT once existed but cannot be located.  If any DOCUMENT once was, but is no longer in YOUR possession, custody, or control, state the whereabouts of any such DOCUMENT when last in YOUR possession, custody or control, state the manner and date of its disposition, and identify its last known custodian.  To the extent any DOCUMENTS are lost or destroyed, produce and documents which support YOUR assertion that the DOCUMENTS were lost or destroyed, and provide the date thereof.

18.    If YOU file a timely objection to any portion of a request, definition, or an instruction, provide a response to the remaining portion.

19.    As used in these requests, the singular shall also be treated as the plural and vice-versa.

20.     All DOCUMENTS shall be produced in the file folder, envelope, or other container in which the documents are kept by YOU. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

21.     DOCUMENTS shall be produced in such fashion as to identify the department, branch, or office in whose possession it was located and, where applicable, the natural person in whose possession it was found and the business address of each DOCUMENT'S custodian(s).

22.     DOCUMENTS attached to each other should not be separated.

23.     The applicable requirements and definitions of the Federal and Local Rules of Civil Procedure are hereby incorporated by reference.

## DOCUMENT REQUESTS

1.      DOCUMENTS sufficient to show YOUR corporate and organizational structure.

2.      DOCUMENTS sufficient to show the number of airline seats offered for sale and sold by YOU for each month of the CLASS PERIOD for travel on UNITED in the nonstop air travel routes between each of the following airports: a) IAD to SFO; b) IAD to OAK; c) IAD to SJC; d) SFO to IAD; e) OAK to IAD; f) SJC to IAD; g) BWI to SFO; h) BWI to OAK; i) BWI to SJC; j) SFO to BWI; k) OAK to BWI; and, l) SJC to BWI.

3.      ALL code-share agreements or other agreements or contracts that YOU contend permitted carriers other than UNITED to offer for sale seats on UNITED during

the CLASS PERIOD on the nonstop air travel routes between the WASHINGTON

METROPOLITAN AIRPORTS and the SAN FRANCISCO BAY AREA AIRPORTS.

   4.    ALL DOCUMENTS RELATING, PERTAINING, and/or

REFERENCING prices charged by YOU for tickets on UNITED on the nonstop air travel

routes between the WASHINGTON METROPOLITAN AIRPORTS and the SAN

FRANCISCO BAY AREA AIRPORTS.

   5.    ALL DOCUMENTS RELATING, PERTAINING, and/or

REFERENCING the effect, impact, and/or relevance of entry by Southwest Airlines on

UNITED's pricing for air travel tickets in any air travel route.

   6.    ALL DOCUMENTS RELATING, PERTAINING, and/or

REFERENCING the effect, impact, relevance of entry by JetBlue Airways on UNITED's

pricing for air travel tickets in any air travel route.

   7.    ALL DOCUMENTS RELATING, PERTAINING, and/or

REFERENCING competitors and/or competition in the nonstop air travel routes between

the WASHINGTON METROPOLITAN AIRPORTS and the SAN FRANCISCO BAY

AREA AIRPORTS.

   8.    ALL DOCUMENTS RELATING, PERTAINING, and/or

REFERENCING YOUR market share of the nonstop air travel routes between the

WASHINGTON METROPOLITAN AIRPORTS and the SAN FRANCISCO BAY

AREA AIRPORTS.

   9.    ALL DOCUMENTS that YOU contend support YOUR contention that

connecting and/or multi-stop air travel between the WASHINGTON METROPOLITAN

AIRPORTS and the SAN FRANCISCO BAY AREA AIRPORTS is viewed by

consumers as a reasonable economic substitute for nonstop air travel between the WASHINGTON METROPOLITAN AIRPORTS and the SAN FRANCISCO BAY AREA AIRPORTS.

10.    ALL DOCUMENTS RELATING, PERTAINING, and/or REFERENCING FairAir.com.

11.    ALL DOCUMENTS RELATING, PERTAINING, and/or REFERENCING YOUR decision not to make tickets sold on the nonstop air travel routes between the WASHINGTON METROPOLITAN AIRPORTS and the SAN FRANCISCO BAY AREA AIRPORTS transferable or subject to resale.

12.    ALL DOCUMENTS RELATING, PERTAINING, and/or REFERENCING any policy or practice by YOU to permit or not to permit name changes on issued air travel tickets.

13.    ALL DOCUMENTS referenced and/or relied upon by YOU in responding to any discovery request, interrogatory, and/or request for admission in this action.

14.    For each month of the CLASS PERIOD, DOCUMENTS sufficient to show YOUR nonstop scheduled air travel service between the METROPOLITAN WASHINGTON AIRPORTS and the SAN FRANCISCO BAY AREA AIRPORTS, including but not limited to, the scheduled service, type of aircraft, and number of seats available per aircraft.

15.    For each month of the CLASS PERIOD, DOCUMENTS sufficient to show the nonstop scheduled air travel service between the METROPOLITAN WASHINGTON AIRPORTS and the SAN FRANCISCO BAY AREA AIRPORTS

offered by any carrier other than UNITED, including but not limited to, the scheduled

service, type of aircraft, and number of seats available per aircraft.

16.    ALL DOCUMENTS RELATING, PERTAINING, and/or

REFERENCING YOUR revenues, costs, and/or profits during the CLASS PERIOD from

the sale and offering for sale of airline tickets in the nonstop air travel route on UNITED

between the WASHINGTON METROPOLITAN AIRPORTS and the SAN

FRANCISCO BAY AREA AIRPORTS.

17.    ALL DOCUMENTS produced by YOU in the litigation styled as

*Continental Airlines, Inc. v. United Air Lines, Inc.*, No. Civ. A-00-684-A (E.D. Va.).

18.    ALL legal briefs and memoranda filed by YOU in the litigation styled as

*Continental Airlines, Inc. v. United Air Lines, Inc.*, No. Civ. A-00-684-A (E.D. Va.).

19.    The Joint Appendix and all ALL other appendices, briefs, motions, and/or

papers filed in the appellate case styled as *Continental Airlines, Inc. v. United Air Lines,*

*Inc.*, No. 01-1435 (4th Cir.).

20.    ALL expert reports, declarations, affidavits and drafts thereof, as well as

ALL depositions, discovery responses obtained and/or propounded by YOU in connection

with the litigation styled as *Continental Airlines, Inc. v. United Air Lines, Inc.*, No. Civ.

A-00-684-A (E.D. Va.).

21.    ALL DOCUMENTS that YOU contend support the definition of the

relevant antitrust market that YOU CONTEND applies to this case.

Dated:   October 9, 2007

Respectfully submitted,

Roy A. Katriel (D.C. Bar No. 460840)
THE KATRIEL LAW FIRM
1101 30th Street, N.W.  Suite 500
Washington, DC 20007
Telephone: (202) 625-4342
Facsimile: (202) 330-5593
e-mail: rak@katriellaw.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

DAVID PASCHKET, individually and on behalf of )
all others similarly situated, )
    133 N. Cherry St. )
    Flushing, MI 48433 )
                                         )
TODD ALDRICH, individually and on behalf of )
all others similarly situated, )
    1529 DeCamp )
    Stockbridge, MI 49285 )
                                         )
HARRIET McENTIRE, individually and on behalf )
of all others similarly situated, )
    P.O. Box 3085 )
    Park City, UT 84060 )
                                         )
AMY ASHERMAN, individually and on behalf of )
all others similarly situated, )
    P.O. Box 3085 )
    Park City, UT 84060 )
and )
                                         )
PADDY WOOD, individually and on behalf of )
all others similarly situated, )
    P.O. Box 3957 )
    Park City, UT 84060 )
                            PLAINTIFFS, )
             v. )
                                           )
NORTHWEST AIRLINES CORPORATION and )
NORTHWEST AIRLINES, INC. )
    2700 Lone Oak Parkway )
    Eagan, MN 55121 )
                                         )
DELTA AIRLINES, INC. )
    P.O. Box 20706 )
    Atlanta, GA 30320-6001 )
and )
                                         )
CONTINENTAL AIRLINES, INC. )
    1600 Smith Street, Department HQSEO, )
    Houston, TX 7702 )
                                         )
                        DEFENDANTS. )

Civil Action No._____

**CLASS ACTION
COMPLAINT**

**JURY TRIAL
DEMANDED**

## NATURE OF THE ACTION

1.      Plaintiffs Todd Aldrich, David Paschket, Harriet McEntire, Amy Asherman, and Paddy Wood (collectively "plaintiffs") bring this class action complaint on behalf of themselves and on behalf all other similarly situated passengers who purchased airline tickets from defendants on the domestic air routes specified herein, to seek redress for defendants' violations of the federal antitrust laws and the common law of unjust enrichment. As detailed herein, defendants are major domestic airline carriers, and possess monopoly market power in the air travel routes specified herein (i.e. the relevant markets). Defendants use and have used their market power to impose an unlawful and anticompetitive contractual restriction on the airline tickets they sell on their monopoly routes that forbids the consumer purchaser from ever reselling or transferring his or her ticket to a third party. By imposing this anticompetitive and unlawful contractual condition, defendants have been able to unlawfully restrain trade, thwart the emergence of a secondary marketplace for their airline tickets, and cement their monopoly market power in these air routes.

2.      The details of defendants' unlawful conduct are more fully set forth below. The following narrative, however, provides a summarized example for illustrative purposes. Defendant Northwest Airlines Corp., through its subsidiary Northwest Airlines, Inc., possesses monopoly market power in the market for domestic air travel exceeding 150 miles that originates and/or terminates in the Minneapolis-St. Paul Airport. Approximately 80 percent of domestic flights of over 150 miles that originate or terminate in the Minneapolis-St. Paul Airport have been operated by Northwest Airlines during the class period. Defendant Northwest Airlines uses its monopoly market power

in this relevant market to impose a contractual condition, pursuant to which Northwest Airlines bars all of its passenger customers on these travel routes from ever reselling or transferring the airline ticket to and/or from Minneapolis-St. Paul that they have purchased from Northwest Airlines. In the absence of Northwest Airlines' unlawfully imposed restriction, if a passenger paid $ 400 for a ticket from Minneapolis to Oklahoma City, and subsequently found that he was unable to use the ticket, he would have been able to attempt to resell that ticket to a third party to recoup part or all of his original purchase price. In this manner, competition would be present between Northwest Airlines and the secondary marketplace comprised of such passengers seeking to resell their tickets, and the presence of such a secondary marketplace would serve as price-constraining competition on Northwest Airlines' ticket prices to and/or from Minneapolis-St. Paul. After all, no rational consumer would pay Northwest Airlines $ 400 for a ticket to and/or from Minneapolis-St. Paul if the same consumer could purchase the same ticket for the same route and dates on a secondary marketplace such as eBay or the like from a customer who was reselling a ticket that he originally purchased from Northwest Airlines. Northwest Airlines' unlawful contractual restriction barring *all* resales and transfers, however, prevents this competition from ever taking place.

      3.      Northwest Airlines' use of its monopoly market power in the market for domestic airline travel of over 150 miles that originates and/or terminates in Minneapolis-St.Paul in order to impose this contractual bar on resale is an agreement in restraint of trade in violation of Section 1 of the Sherman Act. Northwest Airlines' use of this contractual bar to cement its monopoly in this relevant market also amounts to unlawful monopolization in violation of Section 2 of the Sherman Act.

3

4.       The illustrative example recounted in paragraph 2 is also applicable to the

relevant market for domestic airline travel of over 150 miles that originates and/or

terminates in Detroit's Wayne County Metropolitan Airport, where defendant Northwest

Airlines also has monopoly market power, and where Northwest Airlines uses that market

power to impose the same unlawful and anticompetitive contractual bar on resale or

transfer of its tickets. Similarly, the same unlawful conduct is actionable against the other

named defendants in this action in the respective relevant markets where they possess

monopoly market power, as each of the named defendants uses its market power in its

respective relevant market to impose the same contractual bar on resale of its airline

tickets. Specifically, defendant Northwest Airlines possesses monopoly market power in

the relevant market for domestic airline travel of over 150 miles that originates and/or -

terminates in Minneapolis-St. Paul, as well as in the separate relevant market for

domestic airline travel of over 150 miles that originates and/or terminates in Detroit's

Wayne County Metropolitan Airport; defendant Delta Airlines possesses monopoly

market power in the relevant market for domestic airline travel of over 150 miles that

originates and/or terminates in Salt Lake City's International Airport, as well as in the

separate relevant market for domestic airline travel of over 150 miles that originates

and/or terminates in Atlanta's Hartsfield-Jackson International Airport; and, defendant

Continental Airlines possesses monopoly market power in the relevant market for

domestic airline travel of over 150 miles that originates and/or terminates in Houston's

George Bush Intercontinental Airport. In each of these relevant markets, the monopolist

defendant uses its market power to unlawfully impose a bar on the resale or transfer of its

4

airline tickets. No government regulation, statute, or rule requires the imposition of this contractual bar.

## JURISDICTION AND VENUE

5.      Count I of this complaint is brought to seek monetary and injunctive relief for defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. This Court, therefore, has subject-matter jurisdiction over this count pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

6.      Count II of this complaint is brought to seek monetary and injunctive relief for defendants' unlawful monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. This Court, therefore, has subject-matter jurisdiction over this count pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

7.      Count III of this complaint is brought to seek disgorgement, restitution, and/or any other redress deemed proper by the Court for defendants' violations of the common law of unjust enrichment. Because this claim arises from the same common nucleus of operative fact as counts I and II of this complaint, this Court has subject-matter jurisdiction over this count pursuant to 28 U.S.C. § 1367.

8.      Each of the defendants transacts business within this judicial district. Further, each of the defendants has an office in this judicial district, and is therefore deemed to reside within this judicial district for purposes of venue under 28 U.S.C. § 1391(b) and 1391(c). For example, defendant Northwest Airlines maintains an office at 901 15th Street, NW, Suite 310 in Washington, DC, and routinely transacts business within this district. Defendant Delta Air Lines, Inc. maintains an office at 1275 K Street, NW Suite 1200 in Washington, DC, and routinely transacts business within this judicial

district. Defendant Continental Airlines maintains an office at 1350 I Street, NW Suite

1250 East in Washington, DC, and routinely transacts business within this judicial

district. This Court, therefore, has personal jurisdiction over each of the defendants, and

venue is proper in this district pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 22.

## PARTIES

9.      Plaintiff David Paschket ("Paschket") is a resident of Michigan. During

the class period, Paschket purchased a domestic airline ticket from defendant Northwest

Airlines to travel to and from the Minneapolis-St. Paul International Airport on

Northwest Airlines. Defendant Northwest Airlines used its market power in the relevant

market for travel originating and/or terminating in the Minneapolis-St. Paul International

Airport to impose a contractual restriction forbidding Paschket and similarly situated

passengers from reselling or transferring their tickets.

10.     Plaintiff Todd Aldrich ("Aldrich") is a resident of Michigan. During the

class period, Aldrich purchased a domestic airline ticket from defendant Northwest

Airlines to travel to and from the Detroit Metropolitan Wayne County Airport on

Northwest Airlines. Defendant Northwest Airlines used its market power in the relevant

market for travel originating and/or terminating in Detroit's Metropolitan Wayne County

Airport to impose a contractual restriction forbidding Aldrich and similarly situated

passengers from reselling or transferring their tickets.

11.     Plaintiff Harriet McEntire ("McEntire") is a resident of Utah. During the

class period, McEntire purchased a domestic airline ticket from defendant Delta Airlines

to travel to and from the Hartsfield-Jackson Atlanta International Airport on Delta

Airlines. Defendant Delta Airlines used its market power in the relevant market for travel

6

originating and/or terminating in Atlanta's Hartsfield-Jackson International Airport to impose a contractual restriction forbidding McEntire and similarly situated passengers from reselling or transferring their tickets.

12.     Plaintiff Paddy Wood ("Wood") is a resident of Utah. During the class period, purchased a domestic airline ticket from defendant Delta Airlines to travel to and from the Salt Lake City's International Airport on Delta Airlines. Defendant Delta Airlines used its market power in the relevant market for travel originating and/or terminating in Salt Lake City's International Airport to impose a contractual restriction forbidding Wood and similarly situated passengers from reselling or transferring their tickets.

13.     Plaintiff Amy Asherman ("Asherman) is a resident of Utah. During the class period, Asherman purchased a domestic airline ticket from defendant Continental Airlines to travel to and from the Houston's George Bush Intercontinental Airport on Continental Airlines. Defendant Continental Airlines used its market power in the relevant market for travel originating and/or terminating in Houston's George Bush Intercontinental Airport to impose a contractual restriction forbidding Asherman and similarly situated passengers from reselling or transferring their tickets.

14.     Defendant Northwest Airlines Corporation is a corporation organized under the laws of the State of Delaware, and having its principal place of business at 2700 Lone Oak Parkway in Eagan, Minnesota 55121. Northwest Airlines Corporation is the indirect parent corporation of defendant Northwest Airlines, Inc. Unless otherwise specified, these two defendants are collectively referred to throughout this Complaint as either "Northwest" or "Northwest Airlines." Northwest operates the world's fourth

largest airline as measured by revenue passenger miles, and is engaged in the business of transporting passengers and cargo. Defendant Northwest is found within and is a resident of this judicial district, as it maintains an office located at 901 15th Street, NW, Suite 310 in Washington, D.C.

15.     Defendant Delta Airlines, Inc. ("Delta") is a corporation organized under the laws of the State of Delaware, and having its principal place of business at Post Office Box 20706 in Atlanta, Georgia 30320-6001. Delta provides air transportation for passengers and freight throughout the United States and around the world. As of April 1, 2005, Delta (including its wholly owned subsidiaries, Atlantic Southeast Airlines, Inc. and Comair, Inc.) served 217 domestic cities in 46 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands, as well as 55 international cities in 36 countries. Defendant Delta is found within and is a resident of this judicial district, as it maintains an office located at 1275 K Street, NW Suite 1200 in Washington, DC.

16.     Defendant Continental Airlines, Inc. ("Continental") is a corporation organized under the laws of the State of Delaware, and having its principal place of business at 1600 Smith Street, Department HQSEO, in Houston, Texas 7702. Continental provides air transportation for passengers and freight throughout the United States and around the world. Defendant Continental is found within and is a resident of this judicial district, as it maintains an office located at 1350 I Street, NW Suite 1250 East in Washington, DC.

## RELEVANT MARKETS AND DEFENDANTS' MARKET POWER THEREIN

17.     For purposes of this complaint, there are five separate relevant markets. The first relevant product market consists of the market for ticket sales of domestic airline

8

flights exceeding 150 miles and originating and/or terminating in the Minneapolis-St. Paul International Airport ("the Minneapolis Airport Market"). The second relevant product market consists of the market for tickets sales of domestic airline flights exceeding 150 miles and originating and/or terminating in Detroit's Metropolitan Wayne County Airport ("the Detroit Wayne County Airport Market"). The third relevant market consists of the market for tickets sales of domestic airline flights exceeding 150 miles and originating and/or terminating in Atlanta's Hartsfield-Jackson International Airport ("the Atlanta Airport Market"). The fourth relevant market consists of the market for ticket sales of domestic airline flights exceeding 150 miles and originating and/or terminating in the Salt Lake City Airport ("the Salt Lake City Airport Market"). The fifth relevant market consists of the market for ticket sales of domestic airline flights exceeding 150 miles and originating and/or terminating in Houston's George Bush Intercontinental Airport ("the Houston Intercontinental Airport Market.").

18.    The foregoing relevant markets are recognized as discrete and separate markets for which there is discrete consumer demand. For distances exceeding 150 miles, there are no economic substitutes to airline travel that pose price-constraining competition to the pricing of the airline flights forming part of the relevant market. Even if alternative transportation other than airline travel, such as bus, train, or automobile travel, were available at a less expensive price, consumers are not likely to forego flying for such "over 150 mile" trips in favor of such alternative transportation means. Airline flights posses distinct and unique attributes and characteristics of importance to a consumer that are not readily available by alternate means of transport such as bus, vehicle, or railway travel. Most prevalent, airline travel offers consumers the ability to

9

travel at speeds that far exceed the speeds available on any other mode of transportation,
and thereby allow the consumer to arrive at his or her destination faster than on any other
means of transport. In addition, airline travel is by far the safest means of travel,
particularly for distances exceeding 150 miles.

19.     Consumers, the courts, and defendants also specifically recognize and
have recognized that all airline flights departing and/or terminating at a particular airport
hub are a proper means of defining a relevant market. A carrier that has market power at
a particular hub airport is generally able to use that market power to affect the price of all
flights incoming and departing into that hub airport. Further, at each airport there are
inherent barriers to entry that prevent the ready entry of competition. For example,
airports are inherently constrained by capacity controls, such as the number of available
gates, the number of available take-off and landing slots, noise and curfew restrictions,
the total passenger capacity that the airport is equipped to handle per day, as well as other
limiting factors. For this and other reasons, both courts and defendants, themselves, have
previously recognized that flights terminating and originating into or out of a particular
hub airport constitute a proper market definition.

20.     In each of the five relevant markets defined herein, one defendant has
monopoly market power. Defendant Northwest, for example, has monopoly market
power in both the Detroit Wayne County Metropolitan Airport Market and in the
Minneapolis-St. Paul Airport Market. During the class period, approximately 80 percent
of the domestic flights over 150 miles that depart from and/or arrive to the Detroit Wayne
County Metropolitan Airport Market have been Northwest flights. The same is true in the
Minneapolis-St. Paul Airport Market— during the class period, approximately 80 percent

of the domestic flights over 150 miles that depart from and/or arrive to the Minneapolis-St. Paul Airport have been Northwest flights.

21.    Defendant Continental Airlines possesses monopoly market power in the Houston Intercontinental Airport Market. During the class period, over 80 percent of the domestic airline flights over 150 miles that depart from and/or arrive to Houston's George Bush Intercontinental Airport have been Continental Airlines flights.

22.    Defendant Delta Air Lines possesses monopoly market power in the Atlanta Airport Market and in the Salt Lake City Airport Market. During the class period, approximately 75 percent of the domestic airlines flights over 150 miles that depart from and/or arrive to Atlanta's Hartsfield-Jackson International Airport have been Delta flights. Similarly, during the class period, approximately 75 percent of the domestic airline flights exceeding 150 miles that depart from and/or arrive to Salt Lake City's International Airport have been Delta flights.

23.    Defendants' respective market shares in these relevant markets coupled with the high entry barriers already described (gate capacity limitation, limits on available take-off and landing slots, and passenger capacity limitations at airports, among others) mean that each of the defendants has monopoly market power in their respective relevant market, as described herein (i.e. Northwest has monopoly market power in the Detroit Wayne County Metropolitan Airport Market and in the Minneapolis-St. Paul Airport Market; Delta has monopoly market power in the Atlanta Airport Market and in the Salt Lake City Airport Market; and, Continental has monopoly market power in the Houston Intercontinental Airport Market). As a result of their respective market power, each of

11

the defendants has the power to restrict competition and raise prices in each of the

relevant markets in which that defendant possesses monopoly market power.

### DEFENDANTS' ANTICOMPETITIVE ACTS AND THEIR EFFECTS

24. Each of the defendants has used its monopoly market power in the

respective relevant markets alleged herein to impose an anticompetitive and unlawful

contractual bar on the resale of that defendants' domestic airline tickets within the

relevant market at issue.

25. Specifically, defendant Delta has used its monopoly market power in the

Atlanta Airport Market and the Salt Lake City Airport Market in order to impose a

contractual restriction in its airline ticket sales, pursuant to which a consumer passenger

purchasing a Delta ticket on either of these relevant markets is forbidden from reselling or

transferring his airline ticket to a third-party. If the passenger resells or transfers his

ticket, defendant Delta dishonors the ticket, and does not allow the third-party purchaser

to travel on the resold or transferred ticket.

26. The effect of this contractual restriction is to insulate defendant Delta from

competition from any secondary market sales of airline tickets within the Atlanta Airport

Market and Salt Lake City Airport Market. Thus, consumers wishing to purchase

domestic airline tickets within the Atlanta Airport Market or the Salt Lake City Airport

Market have no effective competitive choice but to purchase Delta tickets sold by Delta

or its agents. In the absence of Delta's unlawfully imposed contractual bar on the resale

or transfer of tickets, consumers would be able to shop competitively for tickets within

the Atlanta Airport Market and the Salt Lake City by comparing the price for the tickets

offered for sale by Delta and its agents against the price being demanded for such tickets

by secondary market sellers (i.e. passengers who were reselling their tickets). Delta's

contractual bar, however, has prevented and destroyed this price-competition and has

forced all consumers of domestic airlines tickets within the Atlanta Airport Market and

the Salt Lake City Airport Market to pay supra-competitive prices for their airline tickets.

      27.     Defendant Northwest has used its monopoly market power in the Detroit

Wayne County Metropolitan Airport Market and the Minneapolis-St. Paul Airport Market

in order to impose a contractual restriction in its airline ticket sales, pursuant to which a

consumer passenger purchasing a Northwest ticket on either of these relevant markets is

forbidden from reselling or transferring his airline ticket to a third-party. If the passenger

resells or transfers his ticket, defendant Northwest dishonors the ticket, and does not

allow the third-party purchaser to travel on the resold or transferred ticket.

      28.     The effect of this contractual restriction is to insulate defendant Northwest

from competition from any secondary market sales of airline tickets within the Detroit

Wayne County Metropolitan Airport Market and the Minneapolis-St. Paul Airport

Market. Thus, consumers wishing to purchase domestic airline tickets within the Detroit

Wayne County Metropolitan Airport Market or the Minneapolis-St. Paul Airport Market

have no effective competitive choice but to purchase Northwest tickets sold by Northwest

or its agents. In the absence of Northwest's unlawfully imposed contractual bar on the

resale or transfer of tickets, consumers would be able to shop competitively for tickets

within the Detroit Wayne County Metropolitan Airport Market and the Minneapolis-St.

Paul Airport Market by comparing the price for the tickets offered for sale by Northwest

and its agents against the price being demanded for such tickets by secondary market

sellers (i.e. passengers who were reselling their tickets). Northwest's contractual bar, however, has prevented and destroyed this price-competition and has forced all consumers of domestic airlines tickets within the Detroit Wayne County Metropolitan Airport Market and the Minneapolis-St. Paul Airport Market to pay supra-competitive prices for their airline tickets.

29.    Defendant Continental has used its monopoly market power in the Houston Intercontinental Airport Market in order to impose a contractual restriction in its airline ticket sales, pursuant to which a consumer passenger purchasing a Continental ticket in this relevant market is forbidden from reselling or transferring his airline ticket to a third-party. If the passenger resells or transfers his ticket, defendant Continental dishonors the ticket, and does not allow the third-party purchaser to travel on the resold or transferred ticket.

30.    The effect of this contractual restriction is to insulate defendant Continental from competition from any secondary market sales of airline tickets within the Houston Intercontinental Airport Market. Thus, consumers wishing to purchase domestic airline tickets within the Houston Intercontinental Airport Market have no effective competitive choice but to purchase Continental tickets sold by Continental or its agents. In the absence of Continental's unlawfully imposed contractual bar on the resale or transfer of tickets, consumers would be able to shop competitively for tickets within the Houston Intercontinental Airport Market by comparing the price for the tickets offered for sale by Continental and its agents against the price being demanded for such tickets by secondary market sellers (i.e. passengers who were reselling their tickets). Continental's contractual bar, however, has prevented and destroyed this price-

competition and has forced all consumers of domestic airlines tickets within the Houston
Intercontinental Airport Market to pay supra-competitive prices for their airline tickets.

## ANTICOMPETITIVE EFFECTS ON CONSUMERS AND ANTITRUST INJURY

31.    As a direct, proximate and foreseeable result of the foregoing conduct,
each of the defendants has been able to thwart competition, restrain trade, and cement its
monopoly in the relevant markets alleged herein in which that defendant has monopoly
market power.

32.    In the absence of defendants' unlawful contractual prohibitions on ticket
resales or transfers, consumers would be able to sell and purchase airline tickets in an
open secondary market at prices that would not be dictated or controlled by defendants.
Thus, absent defendants' unlawful restrictions on resale or transfer of airline tickets, any
willing seller would be able to sell his or her airline ticket to any willing buyer in an open
marketplace, on the price terms negotiated by the open marketplace.  Defendant airline
carriers would, therefore, face competition from such secondary marketplace sales for
defendants' tickets in the relevant markets alleged herein, and would have to compete
against the pricing prevailing in this secondary marketplace.

33.    Thus, in the absence of defendants' unlawful contractual restrictions on
resale or transfer of tickets, a consumer would not be limited to purchasing his airline
tickets within the relevant market on only the price terms set by defendants.  He would be
able to comparison shop amongst all secondary sellers of such tickets for the best price,
and defendants would also have to compete against such secondary sellers in making their
own pricing decisions.

34.    As a further direct, proximate and foreseeable result of defendants'
unlawful contractual bar on resale or transfer of airline tickets, each defendant has
managed to unlawfully maintain and cement its respective monopoly in the relevant
markets alleged herein in which that defendant is alleged to possess monopoly market
power. In the absence of this unlawful contractual bar on resale or transfer of tickets, a
passenger-consumer would no longer be effectively required to purchase his ticket to
and/or from the Minneapolis-St. Paul Airport or to and/or from the Detroit Wayne County
Metropolitan Airport only from defendant Northwest or Northwest's agents.  Instead,
absent Northwest's bar on resale of tickets, such a passenger could have purchased his
tickets to/or from the Minneapolis-St. Paul Airport or to and/or from the Detroit Wayne
County Metropolitan Airport from any number of secondary marketplace resellers of such
tickets.  Northwest's anticompetitive contractual bar on resale or transfer of tickets,
however, has the effect of maintaining Northwest's monopoly market power in these
relevant markets, insulating Northwest from competition from other sellers, and
effectively forcing consumers to purchase their airline tickets in these relevant markets
only from Northwest or Northwest's agents.  The same is true with respect to all other
named defendants within the relevant markets alleged herein in which those defendants
are alleged to possess monopoly market power.

35.    As a direct, proximate and foreseeable result of defendants' unlawful
conducts, plaintiffs and all the members of the class they seek to represent have been
injured in their business and/or property.  Each consumer-passenger of defendants in the
relevant markets in which defendants are alleged to have monopoly power during the
class period has been forced to pay supra-competitive prices for his or her airline

16

purchase from defendants. Absent defendants' anticompetitive conduct described herein, each of the defendants would have faced competition for their ticket sales from the secondary marketplace, and would no longer be able to demand monopoly prices for the tickets it or its agents sell for travel within the relevant markets alleged herein in which that defendant is alleged to possess monopoly market power. Put simply, if a consumer were free to purchase his airline ticket not only from the defendants or their agents, but also from any willing seller on such secondary marketplaces as eBay and the like, defendants' pricing power would be constrained and checked by such secondary marketplaces. By thwarting and destroying such secondary marketplaces for the relevant markets alleged herein, defendants have been able to charge supra-competitive prices for their airline ticket sales within the relevant market, and have thereby caused plaintiffs and the class members to sustain antitrust injury.

36.    On their face, each of defendants' practices of contractually forbidding any resale or transfer of their airline tickets within the relevant markets alleged herein has the obvious anticompetitive effect of precluding the ability of any willing seller who owns an airline ticket from selling that ticket to any willing buyer at any price negotiated between these two market actors. Defendants' practices, instead, force consumers to purchase their airline tickets at prices dictated only by defendants. To the extent that any procompetitive effects even exist for such conduct, an outright bar on all ticket resales or transfers is an overly broad and unnecessarily restrictive means of achieving any such procompetitive effects. To the extent any such procompetitive effects exist, they can be accomplished through less restrictive and less anticompetitive means than the outright bar on ticket resales or transfers of any kind.

17

## CLASS PERIOD

37.     The class period for this action includes the period from August 26, 2001 to the present and going forward into the future, as long as defendants continue the conduct alleged herein.

## CLASS ACTION ALLEGATIONS

38.     Pursuant to Federal Rule of Civil Procedure 23(b)(3) and 23(b)(2), plaintiffs bring this action as a class action on behalf of themselves and all similarly situated consumers who, during the class period, purchased airline tickets from any defendant or its agents for travel in any of the relevant markets in which that defendant allegedly possesses monopoly market power, as alleged herein. Specifically, plaintiffs seek to represent a class of consumer purchasers who, during the class period, purchased a ticket from Northwest or its agents for domestic travel on a trip exceeding 150 miles to and/or from Minneapolis-St. Paul Airport or for such a flight to and/or from the Detroit Wayne County Metropolitan Airport. Also included within the class, are all consumer-purchasers who, during the class period, purchased a ticket from Delta or its agents for domestic travel on a trip exceeding 150 miles to and/or from the Salt Lake City Airport or for such a flight to and/or from Atlanta's Hartsfield-Jackson International Airport. Also included within the class, are all consumer-purchasers who, during the class period, purchased a ticket from Continental or its agents for domestic travel on a trip exceeding 150 miles to and/or from Houston's George Bush Intercontinental Airport. Specifically and explicitly excluded from the class are all consumers whose only purchase otherwise falling within the foregoing class definition was a purchase for a monopoly-to-monopoly airport travel, which is defined as a purchase for travel on a flight from one of the airports

18

listed herein where one defendant is alleged to have monopoly market power and into another airport listed herein wherein another defendant is alleged to have monopoly market power (e.g. purchases of a Northwest flight from Minneapolis-St. Paul to Atlanta would be excluded). Similarly excluded from the class are defendants, their employees and relatives, affiliates and agents, as well as all judicial officers and governmental entities.

39.    The class is so numerous that joinder of all putative class members as parties would be impracticable. Although plaintiffs are not presently aware of the exact size of the class, it is reasonable to assume, based on the number of passengers transported by defendants to or from the airports at issue, that the number of class members is likely in the hundreds of thousands or in the millions.

40.    The claims of the named plaintiffs are typical of the claims of the absent class members. Specifically, each of the named plaintiffs purchased a domestic airline ticket from at least one of the defendants in a relevant market defined herein in which that defendant is alleged to have monopoly market power. Further, each of the plaintiffs, like the class members, was subject to a contractual bar imposed by defendants pursuant to which the defendant carriers forbade the named plaintiffs and the class member from reselling or transferring their airline tickets to a third party. The named plaintiffs, therefore, raise the same claims for redress under the Sherman Act and the common law, as is typical of the claims of the absent class members.

41.    There are common questions of law and fact that predominate over individual issues applicable to the individual plaintiffs and class members. Among these common questions of fact and law are the following:

19

a)  the definition of the relevant market(s);

b)  Defendants' market power within these relevant market(s);

c)  whether defendants imposed an unlawful contractual bar on the airline tickets they sold for travel within the relevant market(s) in which defendants' possess monopoly market power;

d)  whether defendants' practices amounted to an unlawful restraint of trade in violation of Section 1 of the Sherman Act;

e)  whether defendants' practices amounted to unlawful monopolization in violation of Section 2 of the Sherman Act;

f)  whether plaintiffs and the class members sustained injury to their business and/or property caused by reason of defendants' alleged violations;

g)  whether defendants have been unlawfully enriched at the expense of the class members;

h)  the proper measure of damages and any other remedy.

42.     Plaintiffs are all adequate representatives of the interests of the class. All of the plaintiffs are members of the proposed class and have agreed to bring this action on behalf of the interests of the class. Plaintiffs have also retained competent counsel, experienced in antitrust and class action litigation to zealously and diligently protect the interests of the class members.

43.     Defendants have acted or refused to act on grounds generally applicable to the class as a whole, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to the class as a whole. Specifically, in violation of the

federal antitrust laws, defendants have imposed a contractual bar forbidding any member

of the class from reselling or transferring his ticket, thereby thwarting competition and

forcing class members to pay supra-competitive prices for their airline tickets. Plaintiffs

and the class members are therefore entitled to declaratory and injunctive relief to enjoin

defendants from continuing to implement and enforce this contractual restriction, as they

are continuing to do.

44.    A class action is a superior and manageable means of adjudicating this

action over individual litigation by each class member, given that the amount at issue for

each individual class member is low relative to the cost of bringing suit, such that

classwide litigation provides the only realistic alternative for class members to seek

judicial redress.

**COUNT I**
**(AGREEMENT IN RESTRAINT OF TRADE- -VIOLATION OF 15 U.S.C. § 1)**

45.    Plaintiffs hereby incorporate by reference all of the allegations of this

complaint with the same force and effect as if they had been fully restated herein.

46.    Defendant Northwest has monopoly market power in both the Detroit

Wayne County Metropolitan Airport Market and in the Minneapolis-St. Paul Airport

Market. Defendant Delta possesses monopoly market power in the Atlanta Airport

Market and in the Salt Lake City Airport Market. Defendant Continental possesses

monopoly market power in the Houston Intercontinental Airport Market.

47.    In each of the relevant markets described herein wherein a Defendant has

monopoly market power, that defendant has used its market power to impose a

contractual prohibition on all tickets sold to class members for travel within that relevant

market, pursuant to which that defendant forbids the consumer class member from ever reselling or transferring his airline ticket to any third party. Thus, in the Minneapolis-St. Paul Airport Market and in the Detroit Wayne County Metropolitan Airport Market, defendant Northwest has used its monopoly market power to impose a contractual bar on the resale or transfer of airline tickets purchased by consumers from Northwest or its agents during the class period for travel within either of these relevant markets. In the Atlanta Airport Market and in the Salt Lake City Airport Market, defendant Delta has used its monopoly market power to impose a contractual bar on the resale or transfer of airline tickets purchased by consumers from Delta or its agents during the class period for travel within either of these relevant markets. In the Houston Intercontinental Airport Market, defendant Continental has used its monopoly market power to impose a contractual bar on the resale or transfer of airline tickets purchased by consumers from Continental or its agents during the class period for travel within this relevant market.

48.    As a direct result of this practice, defendants have been able to: thwart competition within the relevant market(s) where they allegedly posses monopoly market power; preclude the formation of a secondary marketplace for the resale or transfer of airline tickets from any willing seller to any willing buyer at prices negotiated between such actors; and, as a result, caused plaintiffs and the class members to pay supra-competitive prices for their airline ticket purchases within the foregoing relevant markets.

49.    Plaintiffs and the class members have been injured in their business and/or property as a direct, proximate, and foreseeable result of defendants' anticompetitive conduct in that they have been deprived a competitive choice of sellers of airline tickets

within the relevant markets, and have been forced to pay supra-competitive prices for their airline ticket purchases.

50.     On their face, each of defendants' practices of contractually forbidding any resale or transfer of their airline tickets within the relevant markets alleged herein has the obvious anticompetitive effect of precluding the ability of any willing seller who owns an airline ticket from selling that ticket to any willing buyer at any price negotiated between these two market actors. Defendants' practices, instead, force consumers to purchase their airline tickets at prices dictated only by defendants. To the extent that any procompetitive effects even exist for such conduct, an outright bar on all ticket resales or transfers is an overly broad and unnecessarily restrictive means of achieving any such procompetitive effects. To the extent any such procompetitive effects exist, they can be accomplished through less restrictive and less anticompetitive means than the outright bar on ticket resales or transfers of any kind.

51.     Defendants' contracts with plaintiffs and the class members, which include the contractual bar on resale or transfer of the tickets purchased by plaintiffs and the class members, amount to agreements in restraint of trade in violation of Section 1 of the Sherman Act.

52.     Plaintiffs are entitled to monetary damages, including trebling, as well as an award of their reasonable attorneys' fees and costs, as redress for the injuries they sustained as a direct result of defendants' violations of Section 1 of the Sherman Act.

53.     Defendants continue to impose their contractual bar on the resale or transfer of tickets sold by them or their agents to plaintiffs and the class members, and unless enjoined will continue to do so, thereby continuing to injure plaintiffs and the class

members, as well as the traveling public.  Plaintiffs are, therefore, entitled to declaratory and injunctive relief to enjoin these continuing antitrust violations.

## COUNT II
## (UNLAWFUL MONOPOLIZATION—VIOLATION OF 15 U.S.C. § 2)

54.    Plaintiffs hereby incorporate by reference all of the allegations of this complaint with the same force and effect as if they had been fully restated herein.

55.    Defendant Northwest has monopoly market power in both the Detroit Wayne County Metropolitan Airport Market and in the Minneapolis-St. Paul Airport Market.  Defendant Delta possesses monopoly market power in the Atlanta Airport Market and in the Salt Lake City Airport Market.  Defendant Continental possesses monopoly market power in the Houston Intercontinental Airport Market.

56.    Each defendant has unlawfully maintained its monopoly market power, not by superior skill, acumen or business enterprise, but instead by imposing within each of the foregoing relevant market(s) in which it allegedly possesses monopoly market power a contractual bar on resale or transfer of airline tickets sold by that defendant or its agents.

57.    The contractual bar on resale or transfer of airline tickets ensures that for within a relevant market where any of the defendants allegedly possesses monopoly market power, consumers will have no effective competitive choice but to purchase their airline tickets from that monopolist defendant or its agents, as consumers are forbidden from purchasing their tickets from a secondary reseller of the tickets.

58.    As a direct, proximate, and foreseeable result of defendants unlawful

24

monopolization in violation of Section 2 of the Sherman Act, defendants have been able to and have charged plaintiffs and the class members monopoly supra-competitive prices for their airline purchases, thereby injuring plaintiffs and the class members in their business and/or property.

59. Plaintiffs are entitled to monetary damages, including trebling, as well as an award of their reasonable attorneys' fees and costs, as redress for the injuries they sustained as a direct result of defendants' violations of Section 2 of the Sherman Act.

60. Defendants continue to impose their contractual bar on the resale or transfer of tickets sold by them or their agents to plaintiffs and the class members, and unless enjoined will continue to do so, thereby continuing to injure plaintiffs and the class members, as well as the traveling public. Plaintiffs are, therefore, entitled to declaratory and injunctive relief to enjoin these continuing antitrust violations.

## COUNT III
## (COMMON LAW UNJUST ENRICHMENT)

61. Plaintiffs hereby incorporate by reference all of the allegations of this complaint with the same force and effect as if they had been fully restated herein.

62. By purchasing airline tickets from defendants or their agents, plaintiffs and the class members conveyed benefits, in the form of moneys paid, to defendants.

63. Defendants appreciated these benefits conveyed onto them by plaintiffs and the class members.

64. Given defendants' conduct in imposing the anticompetitive and unlawful

contractual prohibitions on the resale or transfer of airline tickets they sold to plaintiffs and the class members, it would be inequitable to allow defendants to continue to retain the benefits conveyed onto them by plaintiffs.

65.    Accordingly, plaintiffs are entitled to an award from this Court directing defendants to disgorge their ill-gotten gains so as to make restitution to plaintiffs and the class members.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs and the class pray for judgment from this Court against defendants, as follows:

a)  That the Court determine that: this action may be maintained as a class action; plaintiffs and their counsel be designated as class representatives and class counsel, respectively; and reasonable notice of this action be given to the members of the class;

b)  That defendants be permanently enjoined from continuing in any manner the violations alleged in this complaint;

c)  That damages be awarded according to proof, that plaintiffs and the class be awarded compensatory and treble damages as well as their reasonable attorneys' fees, costs of suit, and disbursements;

d)  That defendants be ordered to disgorge all sums which they obtained by their wrongful acts;

e)  That plaintiffs and the class be awarded pre- and post-judgment interest;

f)  That plaintiffs and the class obtain such other and further injunctive and declaratory relief as allowed under the Sherman and Clayton Acts or other statutes applicable to this complaint; and,

g)  That plaintiff and the class obtain such other and further relief as the Court may deem just and proper.

Plaintiff demands a trial by jury on all counts.


Dated:  August 26, 2005

Roy A. Katriel, Esq. (D.C. Bar No. 460840)
THE KATRIEL LAW FIRM
1101 30th Street, NW  Suite 500
Washington, DC 20007
Telephone: (202) 625-4342
Facsimile: (202) 625-6774

27

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
**DAVID PASCHKET**, *et al.*,         )
                                    )
            **Plaintiffs,**            )
                                    )     **Civil Action No. 05-1703 (RCL)**
            **v.**                     )
                                    )
**NORTHWEST AIRLINES CORP.**, *et al.*, )
                                    )
            **Defendants.**           )
_____)

## ORDER

Upon consideration of the Parties' Stipulation and Proposed Order Dismissing Complaint

Without Prejudice [7] and the entire record herein, it is hereby

ORDERED that the Parties' Stipulation and Proposed Order Dismissing Complaint

Without Prejudice [7] is APPROVED.  It is further

ORDERED that Plaintiffs' Complaint shall be DISMISSED without prejudice.

SO ORDERED.


Signed by Royce C. Lamberth, United States District Judge, October 14, 2005.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RICHARD DOMINGUEZ, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | ) ) ) | |
| | ) | **Civil Action 1: 07CV00418 (RJL)** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| UAL CORPORATION, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED AIRLINES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PROPOSED ORDER GRANTING DEFENDANTS' MOTION FOR
PROTECTIVE ORDER AND TO STAY DISCOVERY**

Upon consideration of the Defendants' Motion for Protective Order And To Stay

Discovery and the supporting memorandum, it is hereby ORDERED that the Defendants'

Motion for Protective Order And To Stay Discovery is GRANTED.

It is further ORDERED that Defendants shall not be required to respond to

Plaintiff's First Request for Production of Documents and Things Propounded on

Defendants UAL Corporation and United Air Lines, Inc. until 21 days after the Court

rules on Defendants' Motion to Dismiss.

It is further ORDERED that no further discovery shall take place prior to 21 days

after the Court rules on Defendants' Motion to Dismiss.

SO ORDERED

_____

United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RICHARD DOMINGUEZ, ON BEHALF<br>OF HIMSELF AND ALL OTHERS<br>SIMILARLY SITUATED, | ) ) ) | |
| | ) | **Civil Action 1: 07CV00418 (RJL)** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| UAL CORPORATION, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED AIR LINES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

<u>**DECLARATION OF JOHN ROBERTI PURSUANT TO LOCAL CIVIL RULE 7(m)**</u>

I, John Roberti, declare as follows:

1.      I am counsel for Defendants UAL Corporation and United Air Lines, Inc. (collectively, "United").  I submit this declaration in accordance with Local Civil Rule 7(m) to describe the parties' efforts to meet and confer regarding whether discovery should take place in light of defendants' pending motion to dismiss.

2.      On October 19, 2007, I contacted  Roy A. Katriel, counsel for Plaintiff, to discuss whether Plaintiff would consent to a motion to stay discovery pending the outcome of defendants' motion to dismiss.  We were unable to resolve the issue on that call, but agreed to continue our conference.

3.      On October 24, 2007, Mr. Katriel and I continued our conference and were unable to reach agreement to stay discovery.  In particular, Mr. Katriel told me then that Plaintiff opposes the protective order sought by this motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of November, 2007, in Washington, D.C.

_____/s/_____

John Roberti (76397)
Mayer Brown LLP
1909 K Street, NW
Washington, D.C. 20006
(202) 263-3000

Counsel for Defendants UAL Corporation and
United Air Lines, Inc.