IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD DOMINGUEZ, on behalf of himself and all others similarly situated,<br><br>   Plaintiff,<br><br> v.<br><br>UAL CORPORATION<br><br>and<br><br>UNITED AIRLINES, INC.<br><br>   Defendants | Civil Action No. 1:07CV00418 (RJL) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION FOR CERTIFICATION OF THE MARCH 3, 2008 ORDER
FOR IMMEDIATE APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

  While plaintiff Richard Dominguez defends the substance of this Court's ruling in opposing defendants' motion for Section 1292(b) certification, he fails to address meaningfully the statutory criteria that govern when certification is appropriate. Dominguez's opposition makes clear that he wishes to begin discovery now, but that desire has no bearing on the issue before this Court: whether the Court's order involves (1) a "controlling question of law" for which (2) there is "substantial ground for [a] difference of opinion" and (3) "an immediate appeal * * * may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (2007). Each of these criteria is unquestionably satisfied here.

Indeed, Dominguez denies neither that his legal theory is unprecedented nor that the ramifications of his claim are extraordinary:  Defendants United Air Lines and UAL Corp. ("United") (and in fact, all airlines) would be forced to restructure the way in which they do business; hire a significant number of employees to deal with the resultant longer lines at airport counters; and take substantial steps to deal with the new security concerns that would be imposed under the regime that Dominguez favors.

By allowing Dominguez's claim to go forward, the Court's Order breaks new ground in the antitrust field.  That Order should be assessed by the Court of Appeals now rather than forcing United to endure wasteful one-sided, expensive, and invasive discovery—not to mention putting both parties and the Court through extensive pre-trial proceedings—all of which will be for naught if the D.C. Circuit decides that the untenable antitrust theory advanced by Dominguez fails as a matter of law.

## ARGUMENT

Dominguez either avoids or barely addresses any of the criteria under Section 1292(b). Instead, he makes conclusory remarks that (1) an interlocutory appeal is reserved for extraordinary cases and (2) that this case is not extraordinary.  United has no quarrel with the first point—that not every interlocutory order should be subject to an immediate appeal—but for the reasons explained in United's opening memorandum and further explained below, this case *is not* ordinary precisely because it fully satisfies the statutory criteria for interlocutory review.

### A.   The Court's March 3, 2008 Order Involves Controlling Questions of Law.

A "controlling question of law" under §1292(b) is "one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources." *APCC Servs., Inc. v. Sprint Commcn's Co.*, 297 F.

Supp. 2d 90, 95-96 (D.D.C. 2003) (denying motion to dismiss but granting motion for Section 1292(b) certification) (quoting *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002)).  Dominguez does not dispute the fact that if the Court of Appeals were to reverse the Order, the litigation would be at an end.  Nor does Dominguez challenge United's contention (at pages 7 - 8 of United's memorandum) that, if the Court of Appeals were to agree that United has the right to decide who sells its tickets, Dominguez's Section 1 and unjust enrichment claims are doomed as well.

> **B.      Substantial Ground for Difference of Opinion Exists With Respect to the Issues Raised in the Court's Order.**

Dominguez obliquely argues that the fact that United does not agree with the Court's decision is not enough to create a "substantial ground for difference of opinion." *See* Opp. at 6-7.  But United's position does not rest on mere disagreement with this Court's order.  Instead, the point is that other courts facing similar issues has come to a different conclusion, underscoring that there is a "substantial ground" for a difference of opinion

Dominguez acknowledges that the antitrust laws do not require United to cooperate with its rivals.  He argues that "the allegation is not that United failed to cooperate with any rivals, but rather that it affirmatively barred its passengers from reselling tickets that they owned, and thereby thwarted competition."  Opp. at 4.  However, Dominguez's complaint actually alleges that "competition would be present between United and the secondary market seeking to resell United's tickets." Cmpt. ¶2. Dominguez then explains that "secondary market sellers" are "passengers reselling their tickets." Cmpt. ¶17.  Thus, in Dominguez's hypothetical world, United and the "passengers reselling their tickets" are, indeed, rivals in competition.  Because this Court's holding would authorize liability under the Sherman Act for a refusal to cooperate with rivals, it is in conflict with decisions of the U.S. Supreme Court and D.C. Circuit as well.

*See Verizon Commc'ns, Inc. v. Trinko*, 540 U.S. 398, 407-08 (2004); *Covad Commc'ns v. Bell Atl. Corp.*, 398 F.3d 666, 673 (D.C. Cir. 2005); *see also* Mtn. at 6-7 (discussing *Covad* and *Trinko*).

Specifically, in a case involving American Airlines' "AAdvantage" frequent-flyer program, the Tenth Circuit rejected the argument that it violated Section 1 of the Sherman Act to impose a "no-sale" rule for travel awards (including airline tickets) available as part of the program. *See American Airlines v. Christensen*, 967 F.2d 410, 412, 413-14 (10th Cir. 1992). The court of appeals explained that "no concerted action by American" was alleged, that American "independently set the terms under which it would offer its travel awards," and "the mere fact that [program] members accepted those terms does not generate the kind of concerted action needed to violate Section 1." *Id.* at 413-14; *see also Toscano v. Professional Golfers' Ass'n*, 258 F.3d 978, 983-84 (9th Cir. 2001) (citing *Christensen* for principle that no "common scheme to act in restraint of trade" existed where the defendant PGA "independently set the terms of the contracts" and "local sponsors merely accepted" those terms). As the Tenth Circuit further explained, "Rules restricting the transfer of contract rights such as the 'no-sale' rule are regularly enforced without inquiry into their reasonableness." *Christensen*, 967 F.2d at 415 (citing *Bitterman v. Louisville & Nashville R.R.*, 207 U.S. 205, 221 (1907)).

The same legal principles outlined in *Christensen*, if applied here, would call for dismissal of Dominguez's claims. United's no-resale rule is an independent, unilaterally imposed term that reflects its fundamental right to choose the parties with whom it will deal and its right to decide, within the bounds of antitrust law, not to cooperate with potential competitors.

The conflict with *Christensen* also supports United's understanding that this Court's holding is at the very least in tension—if not in direct conflict—with the Supreme Court's

holding in *Bitterman*. The Supreme Court in *Bitterman* clearly upheld the right of common carriers to issue discount tickets, and restrict and prohibit the use or transfer of those tickets. Mtn. at 3. United's policy is implemented everywhere United flies, even where United does not have a substantial number of flights. Therefore, United must have a motive other than monopolization for implementing this policy. And as the Tenth Circuit noted, *Bitterman* unquestionably approved a "total restriction" on "transferability" of tickets. *Christensen*, 967 F.2d at 415 n.7. This Court's holding would suggest that *Bitterman*'s 101-year-old rule is no longer good law. *But see State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is [the Supreme Court's] prerogative alone to overrule one of its precedents."); *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (lower courts must leave to "this Court the prerogative of overruling its own decisions," even if such a decision "appears to rest on reasons rejected in some other line of decisions"). There is, at minimum, a substantial ground for a difference of opinion over whether this Court's holding is consistent with *Bitterman*, or instead silently rejects it.

\* \* \* \* \*

Each of the above reasons separately provides a substantial ground for disagreement concerning the Court's order.

### C. Immediate Appeal of the Court's Order Would Materially Advance the Ultimate Termination of the Litigation.

Dominguez argues that an immediate appeal would not "materially advance termination of the litigation" in light of the aggressive scheduling order in place. Opp. at 8. It is clear, however, that a decision in United's favor on the controlling question would cease the entire litigation and preserve the judicial and party resources that would be needlessly expended if the Court of Appeals were to reverse and dismiss Dominguez's case. While it is true that the

schedule calls for litigation to proceed quickly, the amount of work that must take place during that time is substantial. All of that would be wasted if the Court of Appeal ultimately reverses.

Dominguez argues that there is no hardship imposed by allowing his novel and extraordinary claims to proceed. There may be little hardship to Dominguez, since he will face little or no discovery burden. But Dominguez's outstanding discovery demands will impose a substantial burden on United. Third parties will also suffer: Because every carrier in the country has the same policy as United, Dominguez will likely seek substantial non-party discovery. An antitrust class action suit potentially involving millions of class members is exactly the type of case for which interlocutory appeal under Section 1292(b) is reserved. *See, e.g., In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) (the interlocutory appeal procedure is only to be used in extraordinary cases where an interlocutory appeal may avoid protracted and expensive litigation). Antitrust class actions are protracted and expensive. Indeed, Congress viewed antitrust cases as the paradigmatic kind of case for which interlocutory appeals are necessary. As the Ninth Circuit has noted, when Congress adopted Section 1292(b), the accompanying Senate report explained that interlocutory appeals should be used sparingly "where a decision of the appeal may avoid protracted and expensive litigation, *as in antitrust and similar protracted cases*, where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided." *United States Rubber Company v. Wright*, 359 F.2d 784, 785 n. 2 (9th Cir. 1966) (quoting S. REP. No. 2434 (1958) (emphasis added)). *Cf. Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1966-67 (2007) ("it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, * * * but quite another to forget that proceeding to antitrust discovery can be expensive. * * * '[T]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against

sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

Not surprisingly, then, district courts have repeatedly certified questions of law under Section 1292(b) in antitrust cases. *See In re Currency Conversion Fee Antitrust Litig.*, No. M 21-95, 2005 WL 1871012, *3 (S.D.N.Y. Aug. 9, 2005) (granting motion for Section 1292(b) certification); *In re High Fructose Corn Syrup Litig.*, 303 F. Supp. 2d 971 (C.D. Ill. 2004) (same); *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741 (D. Md. 2003) (same); *Bradburn Parent Teacher Store, Inc. v. 3M*, No. A.02-7676, 2005 WL 1819969 (E.D. Pa. Aug. 2, 2005) (same); *Eaton v. Siemens*, 2007 WL 2318538, slip op. at 3 (E.D. Cal. Aug. 10, 2007) (granting interlocutory appeal following court's denial of a motion to dismiss).

Last, while Dominguez contends that he is "unaware of any recent District of Columbia decision" granting certification under Section 1292(b) of orders denying motions to dismiss (Opp. at 7), the reality is that judges in this District have granted motion for interlocutory appeal on such and other occasions in recent years. *See Beaty v. Republic of Iraq*, 2007 WL 1169333, slip op. at 2 (D.D.C. Apr. 19, 2007) (granting certification of court's denial of motion to dismiss on grounds of sovereign immunity); *United States. v. Phillip Morris Inc. USA*, No. 99-2496, 2004 WL 1514215 (D.D.C. June 25, 2004) (granting certification of court's order on disgorgement); *APCC Services, Inc.*, 297 F. Supp. 2d 90, *supra* (granting Section 1292(b) motion for review of private right of action under the Communications Act); *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 1285, 2000 WL 33142129 (D.D.C. Nov. 22, 2000) (granting motion for Section 1292(b) review of court's determination that discovery should proceed under the Federal Rules of Civil Procedure as opposed to the Hague Convention); *GTE New Media v.*

*Ameritech*, 44 F. Supp. 2d 313 (D.D.C. 1999) (granting interlocutory review of court's determination of personal jurisdiction over nonresident regional companies).[1]

## CONCLUSION

While not every case merits a 1292(b) certification, this case does.  The plaintiff has brought claims that fly in the face of well-established antitrust principles.  By allowing plaintiff's claim to go forward, United respectfully submits that this Court has made new law in conflict with the law of two circuits; limited a recent Supreme Court opinion substantially by expanding parties' duties to cooperate with competitors; and placed itself in conflict with a century-old Supreme Court ruling holding that United's policy is perfectly lawful.  While courts may not always grant a Section 1292(b) motion, it is the "duty of the district court * * * to allow an immediate appeal to be taken when"—as here—"the statutory criteria [in § 1292(b)] are met." *Ahrenholz v. Board of Trustees*, 219 F.3d 674, 677 (7th Cir. 2000).

The policy implications of this case provide added reason to certify this Court's order.  If a private class action lawsuit compels United (and presumably other airlines) to reverse their no-resale policies, the predictable consequence would be to transform security screening operations

---

[1]   Noting that "certification afforded under Section 1292(b) represents an exception" to the final-judgment rule, Dominguez cites *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994) for the proposition that the "Supreme Court has admonished trial courts to invoke this exception"—*i.e.*, Section 1292(b)—"narrowly, lest it swallow the general rule."  Opp. at 6 (citing *Digital Equip.*, 511 U.S. at 868).  That misstates the holding of the case, which did consider interlocutory appeal under Section 1292(b) but instead examined "the blunt, categorical instrument of [Section] 1291 collateral order appeal" (511 U.S. at 883)—that is, the collateral-order doctrine recognized in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949).  In fact, the Court explained that while the collateral-order doctrine should be construed narrowly, such a "holding should cause no dismay" because "the law is not without its *safety valve*"—"discretionary interlocutory appeal from particular district court orders * * * provided for in [Section] 1292(b) * * *."  *Digital Equip.*, 511 U.S. at 883 (emphasis added).  That safety valve is needed here.

at airports around the country—placing even greater burdens on the Transportation Security Administration, not to mention longer lines for all flyers.

For the foregoing reasons, the Court should grant United's motion for certification of the Order denying United's motion for dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the Court's convenience, a proposed Order that satisfies the certification requirements of Section 1292(b) was included with United's Motion filed on March 17, 2008.

April 4, 2008                                  Respectfully submitted,


                                               UAL CORPORATION and
                                               UNITED AIR LINES, INC.

                                               By: _____

                                                   John Roberti (495718)
                                                   Mayer Brown LLP
                                                   1909 K Street, NW
                                                   Washington, D.C.  20006

                                                   Counsel for Defendants UAL Corporation and
                                                   United Air Lines, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 4th of April, 2008, I caused a true and correct copy of the foregoing **DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SECTION 1292(B) CERTIFICATION** to be filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel who has registered for receipt of documents filed in this manner:

Roy A. Katriel<br>
The Katriel Law Firm<br>
1101 30th St., NW<br>
Suite 500<br>
Washington, DC 20007<br>
(202) 625-4342

In addition, on this same date, I caused the above mentioned Reply to be served upon the following counsel of record via overnight delivery:

Gary B. Friedman<br>
Tracy Kitzman<br>
Friedman Law Group, LLP<br>
270 Lafayette St, 14th Floor<br>
New York, NY 10012<br>
(212) 680-5150

                                                      /s/ John Roberti<br>
                                                    John Roberti (#76397)